WINCHESTER THEATRE COMPANY,
Plaintiff, Appellant,

v.

PARAMOUNT FILM DISTRIBUTING
CORPORATION et al., Defendants,
Appellees.

No. 6108.

United States Court of Appeals
First Circuit.

Nov. 18, 1963.

Ralph Warren Sullivan, Boston, Mass., with whom James M. Malloy and Malloy, Sullivan & Sullivan, Boston, Mass., were on brief, for appellant.

Robert W. Meserve, Boston, Mass., with whom John R. Hally and Nutter, McClennen & Fish, Boston, Mass., were on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is an action brought by Winchester Theatre Company, hereinafter appellant, the operator of a motion picture theatre in Winchester, Massachusetts, against a number of national film distributors doing business in the Boston area, hereinafter defendants, seeking treble damages and other relief because of an alleged conspiracy [1] in violation of sections 1 and 2 of the Sherman Act. At the conclusion of appellant's case the court directed a verdict for the defendants. This action raises the only question necessary for us to consider.[2]

In reviewing the sufficiency of the evidence our task is eased by the fact that in much of the testimony coming from defendants' employees, called and cross-examined by appellant, and E. M. Loew, appellant's principal officer and stockholder, there was surprisingly little conflict. Appellant's theatre was one of thirty-five or forty theatres in the Loew Circuit, so-called. It was relatively small, but well appointed. During the period in question (1954-1958) the defendant distributors each operated under a conventional system of runs and clearances. All

---

1. The complaint names as additional conspirators, but not as defendants, certain exhibitors in areas adjacent to Winchester, seemingly with the intent of establishing conspiracies in addition to the principally horizontal one herein discussed. Appellant makes no present point of this and, as we view the record, properly so.

2. Appellant's allegation of an instance of restriction on cross-examination is without merit. A number of questions relating to damages we do not reach.

gave Boston the first run and, with two irrelevant exceptions, a 21-day clearance. In appellant's general area all defendants, and at least one other distributor not named as a conspirator, gave to theatres in Malden the second, or so-called first subsequent run, and a 7-day clearance over theatres in Winchester, Medford, Woburn, Melrose, Everett, Stoneham and Wakefield.[3] Theatres in these cities received the third, or what Loew described as the "last," or "ashcan run." In 1955 Loew asked each defendant individually to make films available to appellant twenty-one days after Boston, and hence "day and date" with Malden. All refused. Although it is clear that all defendants knew of the uniform pattern with respect to Winchester, there is no direct evidence that it was maintained as a result of any agreement or even consultation. Appellant argues that, nevertheless, such an inference may be drawn. First, it asks us to consider whether known uniform action or "conscious parallelism" can be enough in this case to establish conspiracy. Secondly, it argues that there were additional factors.

It is now widely held that the employment by distributors of a system of runs and clearances does not, per se, violate the Act.[4] The plaintiff must introduce evidence from which the jury could reasonably infer concert of action. We have never recognized conscious parallelism, standing alone, as sufficient to sustain such a finding. See Brown v. Western Massachusetts Theatres, Inc., 1 Cir., 1961, 288 F.2d 302. The present facts are not calculated to cause us to feel differently. Nothing is clearer than that Loew himself wanted, and expected, all defendants to treat appellant alike—he merely wished the treatment to be better. Thus he admitted that when one distributor earlier advanced Winchester from a 14-day clearance to seven days (see fn. 3, supra) he used that fact as an argument to obtain the same concession from other distributors. A fair reading of his testimony shows that he felt that competition required the others to follow suit. On the record it seems clear that if appellant's present request for day and date treatment with Malden had been recognized by any defendant, appellant would almost necessarily have received identical treatment from the rest simply as a result of lawful competitive pressures.

If parallel action is compelled by competition in this area, we find it difficult to say that such action warrants a finding of an illicit agreement.[5] Indeed, if under these circumstances conscious parallel action is equivalent to an agreement, appellant, in requesting defendants to advance it out of the last-run group, knowing that all must respond equally, is asking for the very type of conduct which it presently condemns, see Dipson Theatres, Inc. v. Buffalo Theatres, Inc., 2 Cir., 1951, 190 F.2d 951, 958–959, cert. den. 342 U. S. 926, 72 S.Ct. 363, 96 L.Ed. 691, and which would automatically expose defendants to suits by all those remaining in the run. Accordingly, on appellant's hypothesis it would seem that defendants' only safe recourse would be to promote all In-

---

3. This treatment was not always so homogeneous. During the early part of the period in issue appellant, and some of the others, had been subject to a 14-day clearance, and there had been other variations not worth detailing.

4. For a discussion of that system and its economic justification see Park Neponset Corp. v. Smith, 1 Cir., 1958, 258 F.2d 452; Fanchon & Marco v. Paramount Pictures, Inc., D.C.S.D.Cal., 1951, 100 F. Supp. 84, aff'd, 9 Cir., 1954, 215 F. 2d 167, cert. den. 348 U.S. 912, 75 S.Ct. 293, 99 L.Ed. 715; United States v. Paramount Pictures, Inc., D.C.S.D.N.Y., 1946, 66 F.Supp. 323, 341–46, rev'd on other

grounds, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948); Gary Theatre Co. v. Columbia Pictures Corp., 7 Cir., 1941, 120 F.2d 891; Westway Theatre, Inc. v. Twentieth Century-Fox Film Corp., D.C. D.Md., 1940, 30 F.Supp. 830, aff'd on opinion below, 4 Cir., 113 F.2d 932.

5. We are not, of course, to be taken as saying that consciously parallel action can never be considered as an element of a plaintiff's case simply because it accords with the defendants' economic self-interest. See generally, Turner, The Definition of Agreement Under the Sherman Act: Conscious Parallelism and Refusals to Deal, 75 Harv.L.Rev. 655 (1962).

dians alike to Chiefs, and hence jettison the entire system of suburban, and indeed of metropolitan, runs and clearances. We are not prepared, simply on Loew's speculation that abandoning the system would be economically advantageous to the defendants [6] to put on trial the entire wisdom of their belief that runs and clearances produce the maximum overall revenue.

We find no merit in appellant's alleged additional grounds. The evidence suggests no motive or basis for the defendants, singly or collectively, to benefit themselves at appellant's expense by protecting Malden, other than through the receipt of larger overall rentals. None of the defendants here was shown to be an exhibitor, or to have any personal interest in the Malden theatres. This is not a case such as United States v. Paramount Pictures, Inc., 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, or Bigelow v. R.K.O. Radio Pictures, 1946, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652, in which there was evidence to support an inference that defendants conspired to give affiliated theatres preferential treatment. Nor is there any question of illegal conspiracy effectuating the restraints of trade and monopolistic practices of a powerful combination of exhibitors as in Interstate Circuit, Inc. v. United States, 1939, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed.

610; United States v. Crescent Amusement Co., 1944, 323 U.S. 173, 65 S.Ct. 254, 89 L.Ed. 160; United States v. Griffith, 1948, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236; or Schine Chain Theatres v. United States, 1948, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245. Indeed, so far as preferring particular customers was concerned, there would seem every reason to prefer the Loew chain over the small number of theatres in Malden.[7]

Appellant's principal argument is that a conspiracy could be inferred from the fact that defendants' conduct was against their apparent best interests. Cf. Dipson Theatres, Inc. v. Buffalo Theatres, Inc., supra, at 958 of 190 F.2d; Milgram v. Loew's, Inc., 3 Cir., 1951, 192 F.2d 579, 583, cert. den. 343 U.S. 929, 72 S.Ct. 762, 96 L.Ed. 1339. The defendants denied that it was to their economic disadvantage to prefer Malden over Winchester, and all that appellant can affirmatively point to is that their business judgment in giving three competing drive-ins[8] (one of which, singularly enough, was Loew's) a run and clearance equal to that at the Malden conventional theatres may have been debatable.[9] We do not think even this is a fair statement so far as the summer months were concerned. How defendants may have responded to the problems of drive-ins in winter, an obviously special situation, is no grounds

6. Loew testified, over objection because he gave no basis for his opinion, that if Winchester, alone, were moved up to Malden, its gross would increase 50%. In support of this, on cross-examination, he stated he felt that appellant would get patronage from Medford and Stoneham. Asked what would happen if Medford and Stoneham were likewise moved up, he said appellant would still get the 50%. Defendants then inquired whether if the entire group were moved up they would all get a 50% increase. Loew replied that they would, and that he "did not say" that the additional customers would come from Malden. Defendants may be forgiven if they declined to believe that such an influx of customers would, as counsel put it, "come out of the woodwork."

7. It cannot be contended that there was an affirmative policy to discriminate against Loew. Admittedly, a number of his the-

atres, including appellant, fn. 3, supra, had been "moved up" from time to time.

8. The testimony indicates that drive-ins, generally, in the Metropolitan Boston area were given 21-day clearances.

9. Loew testified, also, that appellant offered to pay more in film rental, chiefly through instituting longer runs, in the event it obtained an advance. But, except as in fn. 6, supra, there was no attempted showing, and certainly none that was sufficient in the light of undisputed testimony of the probable effect such a move-up would have on defendants' relations with the other competitive third-run theatres, that such increases would be to the ultimate economic advantage of any defendant. See also Brown v. Western Massachusetts Theatres, Inc., 1 Cir., 1961, 288 F.2d 302, 305 n. 7; Fanchon & Marco v. Paramount Pictures, Inc., D.C. S.D.Cal., 1951, 100 F.Supp. 84, 96.

for finding that they were acting against their apparent best interests in preferring Malden's conventional theatres over Winchester. We must hold on the scant evidence produced that the grant of the directed verdict was not error.

Judgment will be entered affirming the judgment of the District Court.