**NAUMKEAG THEATRES CO., Inc.,**
**Plaintiff, Appellant,**

v.

**NEW ENGLAND THEATRES, INC.,**
**et al., Defendants, Appellees.**

**No. 6352.**

United States Court of Appeals
First Circuit.

Heard Dec. 8, 1964.

Decided May 25, 1965.

Aldrich, Chief Judge, dissenting in part.

W. Bradley Ryan, Boston, Mass., with whom Barry R. McDonough, Boston, Mass., was on brief, for appellant.

Robert W. Meserve, Boston, Mass., with whom Dana C. Coggins, Boston, Mass., Stuart Aarons, New York City, Richard L. Brickley, Nutter, McClennen & Fish, and Brickley, Sears & Cole, Boston, Mass., were on brief, for appellees.

Before WOODBURY, Chief Judge, ALDRICH, Circuit Judge, and CAFFREY, District Judge.

ALDRICH, Chief Judge.

This is a moving picture private antitrust action in which the primary question is whether the evidence, including any which we may find the district court wrongfully excluded, entitled, or would have entitled, the plaintiff to go to the jury. The district court directed a verdict for the defendants at the close of plaintiff's case on the ground that no conspiracy had been shown. Plaintiff appeals.

The plaintiff, Naumkeag Theatres Co., Inc., operates the Paramount Theatre in Salem, Massachusetts. Defendant appellees are six national distributors of motion picture films,[1] and New England Theatres, Inc. and Stanley Warner Management Corp., operators of the Paramount and Warner Theatres, respectively (hereinafter defendant theatres), in Lynn, Massachusetts. The damage period is March 1955 to July 1962. Lynn is about twelve miles from the center of Boston, and Salem about five miles beyond Lynn. Both cities are rather densely populated, with Lynn more than twice as large, but the boundary between them is indistinct. Defendant distributors gave their first run, and a 21-day clearance, to downtown Boston. Lynn, and a number of other cities close to Boston, were thereafter entitled to the first suburban run, so-called, followed immediately by the plaintiff. Except for one theatre with whom plaintiff had made a private arrangement all theatres in plaintiff's competitive area except defendant theatres were for most of the damage period subject not only to an availability behind plaintiff, but to a seven-day clearance in plaintiff's favor.[2] It stands essentially conceded that plaintiff's theatre was on a par, so far as size and excellence of appointments are concerned, with defendant theatres. Plaintiff complains of its assigned special, in-between position after Lynn, and asserts that it should have been in no way subordinate.

Admittedly there was no financial interest or connection between any of the defendants. Admittedly, too, there was no direct evidence of any conspiracy. On the other hand, a majority of the court, at least, is unpersuaded by defendants' claim that there was not even any evidence warranting a finding of "conscious parallelism." This argument, that it did not appear that any distributor knew what the others' decisions "would be" at the time when it made its own decisions, overlooks the obvious fact that decisions (to act or not to act) are made continuously and not once for all. A defendant at all times could look at the past inactivity of its competitors and eventually draw conclusions that if it did not change, neither would they. Defendants' contention is in reality a semantic attempt to say that there is no such thing as conscious parallelism. However, conscious parallelism is concededly not enough. Brown v. Western Massachusetts Theatres, Inc., 1 Cir., 1961, 288 F.2d 302; Winchester Theatre Co. v. Paramount Film Distributing Corp., 1 Cir., 1963, 324 F.2d 652. Plaintiff's burden is to show that there was evidence warranting a finding of something additional from which a reasonable inference of conspiracy may be made, or,

---

1. Metro-Goldwyn-Mayer, Inc. (formerly Loew's, Inc.); Paramount Film Distributing Corp.; Twentieth Century-Fox Film Corp.; United Artists Corp.; Universal Film Exchanges, Inc., and Warner Bros. Pictures Distributing Corp.

2. The plaintiff, in other words, was far from the "ashcan" run of which the plaintiff complained in Winchester Theatre Co. v. Paramount Film Distributing Corp., 1 Cir., 1963, 324 F.2d 652.

as it puts it, of conscious parallelism "plus."

■ The "plus" contention on which plaintiff has principally relied is that it was held behind defendant theatres even though it was not in substantial competition with them. We start here with the principle that the whole system of runs and clearances, contrary to what might appear at first blush, purposely, and legitimately, discriminates between competing exhibitors. By this means distributors hope to reach the largest number of viewers with the smallest number of prints, enable early-run theatres to charge premium prices, and to receive the benefit of word-of-mouth advertising. See United States v. Paramount Pictures, Inc., D.C.S.D.N.Y., 1946, 66 F.Supp. 323, 341–342, rev'd on other grounds, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; Fanchon & Marco v. Paramount Pictures, Inc., D.C.S.D.Cal., 1951, 100 F.Supp. 84, 89, 92. The reverse follows, that discrimination in the absence of competition may be a ground for suspicion.[3] See Theatre Enterprises, Inc. v. Paramount Film Distributing Corp., 1954, 346 U.S. 537, 540, 74 S.Ct. 257, 98 L.Ed. 273; J. J. Theatres, Inc. v. Twentieth Century-Fox Film Corp., 2 Cir., 1954, 212 F.2d 840. The first inquiry, accordingly, is whether it could have been found that plaintiff and the defendant Lynn theatres were not in competition.

■ Consideration of all of those portions of the record that have been called to our attention [4] satisfies us that a finding of no substantial competition between plaintiff and the defendant Lynn theatres would not be warranted.[5] It is true that plaintiff's manager, Field, expressed the conclusory statement that none existed. However, he repeatedly testified to specific matters incompatible with that generalization. For example, although he gave the opinion that defendant Lynn theatres would not have lost customers to plaintiff had plaintiff played "day and date," while plaintiff would have made substantial gains in patronage, he conceded that, except for the other major theatre in Salem which enjoyed equal availability with plaintiff and presumably would continue to do so if plaintiff were moved up, plaintiff already had a priority over neighboring theatres other than those of the Lynn defendants. He also admitted that the difference between 28 days behind Boston and 21 was not in itself serious, but drew significance only from the fact that it meant Lynn was playing films a week before Salem. There was no evidence to the contrary. It in no way appears, in other words, how plaintiff would have drawn more customers from these theatres other than

3. Unlike the matter of clearance between theatres, which can be justified only if there is substantial competition between the theatres, United States v. Paramount Pictures, Inc., 1948, 334 U.S. 131, 68 S. Ct. 915, 92 L.Ed. 1260, a distributor might have independent business reasons for setting up a simple priority of run between non-competing theatres. The not insubstantial cost of an extra print which might be made necessary by a policy of simultaneous showings might outweigh any advantages to be gained. However, the parties seem to have regarded this as a matter of affirmative defense, not yet made. Since we conclude that the evidence showed substantial competition as a matter of law, we may accept, for the purposes of this appeal, the assumption made in this footnoted sentence

4. This court will read all of a short record irrespective of what is specifically cited in the briefs, but, following a practice adopted by Judge Wyzanski in United States v. United Shoe Machinery Corp., D.C.D.Mass., 1950, 93 F.Supp. 190, aff'd on other grounds, 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910, will not necessarily examine uncited parts of long records even though they have been furnished.

5. It is to be noted that plaintiff's burden of showing absence of competition is heavier than it would be if defendants had held it subject to a clearance, as distinguished from a mere subsequent run. See United States v. Paramount Pictures, Inc., 1948, 334 U.S. 131, 145–147, 68 S.Ct. 915, 92 L.Ed. 1260.

Lynn, had it been moved up with Lynn, unless these other theatres had been left where they were, i. e., with an even larger clearance in plaintiff's favor.

■ Furthermore, at various times Field even more specifically contradicted his own conclusions. Lynn, he acknowledged was his "big loss." Salem residents, as well as those of Peabody and Marblehead, an "important part" of his patronage, were, "other things being equal," by which he quite apparently meant "day and date" showing, as likely to go to the movies in Lynn as in Salem. While normally the circumstance that a witness contradicts himself merely leaves an issue of fact for the jury, to permit this in some instances "would result in a mockery of justice." See Solomon Dehydrating Co. v. Guyton, 8 Cir., 1961, 294 F.2d 439, 443, cert. den. 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192. While not suggesting a mockery in this case, we cannot, on the record as a whole, find that Field's favorable testimony made out enough on this issue to warrant a verdict in plaintiff's favor to stand.[6] Cf. Dehydrating Process Co. v. A. O. Smith Corp., 1 Cir., 1961, 292 F.2d 653, 656, cert. den. 368 U.S. 931, 82 S.Ct. 368, 7 L.Ed.2d 194; Solomon Dehydrating Co. v. Guyton, supra. An ultimate conclusion not only unsupported by, but contradictory to the subsidiary facts cannot stand, whether reached by a jury or expressed by a witness. See International Paper Co. v. United States, 5 Cir., 1955, 227 F.2d 201, 205, and cases cited therein.

■ We find plaintiff's contention that placing it behind Lynn was contrary to defendant exhibitors' best financia'. interests, independently considered, totally unsubstantiated. That is, it in no way appears how any distributor could have improved its profits simply by putting plaintiff on the same run as the defendant theatres. Nor can plaintiff make anything of the fact that defendants never did any "experimenting," in the absence of any showing that defendants had reason to suppose that a change would be financially profitable. It is true defendants never made any surveys of the patterns of patronage in the Lynn-Salem area. Neither did plaintiff. If the status quo was reasonable it did not become unreasonable because defendants failed to experiment to see if something else might also work, or conceivably, might work better.

We turn to a quite different matter, that of competitive bidding. In January 1958 plaintiff wrote to each of the defendant distributors what it since calls its "bid or negotiate" letter. It must be conceded that this letter could have been better expressed. Two defendants, Paramount and Fox, viewed it as a request not only for equal availability with Lynn, but, alternatively, for the opportunity to bid competitively for the first suburban run. They responded by permitting plaintiff to bid against the defendant theatres on individual pictures, although plaintiff claims the bidding was

---

6. We may observe that plaintiff's principal damage claim is that if allowed to play day and date with Lynn it would have grossed as much as the defendant theatres. This in itself is not inconsistent with its substantive claim that there is no substantial competition between Lynn and Salem. However, lacking such competition it leaves unanswered the question where the additional customers would have come from. In keeping with a certain ambivalence on its part (as must be clear from our opinion in its entirety) plaintiff in its reply brief suggests that damages might be computed by "pooling" and redistributing Lynn's gross and plaintiff's, citing Columbia Pictures Corp. v. Charles Rubenstein, Inc., 8 Cir., 1961, 289 F.2d 418. Indeed, Field conceded in his deposition that if plaintiff played day and date with Lynn, plaintiff's expected gross increase of 30 to 50% "would probably come out of the Lynn theatre gross but at least it would keep Salem people in Salem." It would obviously be inconsistent to predicate liability on the theory that the Salem Theatres playing day and date with Lynn would have drawn no substantial amount of patronage from Lynn, and permit damages to be awarded solely on the theory that by playing ahead of Salem the Lynn theatres drew patronage that would otherwise have been plaintiff's.

not conducted fairly. A third defendant, Universal, wrote plaintiff and asked if the letter was a request for bidding. According to plaintiff's manager, Field, he replied orally that it was. Universal took no further action. The three other defendants testified, without affirmative contradiction, that they did not construe the letter as a request to be allowed to bid.

As for the two defendants which did permit bidding, plaintiff was able to win only a few Fox films, reputedly of low box office value, and no Paramount films. In response to a question from the court as to whether anything Paramount did caused the lack of success, Field responded, "No, it was circumstance. We just didn't what you might call stretch for them and bid a substantial amount of money." Nevertheless, plaintiff offered evidence that on six Paramount pictures and four Fox pictures application of the percentage terms bid by the plaintiff to the actual gross earned by the defendant theatres would have produced a somewhat higher film rental to the distributor. There was also evidence from which a jury could conclude that plaintiff's theatre was capable of grossing as much as the defendant theatres. See Bordonaro Bros. Theatres, Inc. v. Paramount Pictures, Inc., 2 Cir., 1949, 176 F.2d 594, 597. Field's statement, amounting in substance to an opinion as to the fairness of Paramount's treatment of plaintiff's bids, would not conclude the plaintiff in the face of contradictory evidence even if we construe it as an admission.

On its face, a refusal to permit competitive bidding, or the unfair conduct of permitted bidding, as another road "home," Delaware Valley Marine Supply Co. v. American Tobacco Co., 3 Cir., 1961, 297 F.2d 199, 204, cert. den. 369 U.S. 839, 82 S.Ct. 867, 7 L.Ed.2d 843, would appear to constitute action against individual business interest from which a jury may infer conspiracy. Milgram v.

Loew's, Inc., 3 Cir., 1951, 192 F.2d 579, 583, cert. den. 343 U.S. 929, 72 S.Ct. 762, 96 L.Ed. 1339; see Bigelow v. RKO Radio Pictures, Inc., 1946, 327 U.S. 251, 256, 262, 66 S.Ct. 574, 90 L.Ed. 652; J. J. Theatres, Inc. v. Twentieth Century-Fox Film Corp., 2 Cir., 1954, 212 F.2d 840. Plaintiff does not seek to recover damages on the basis of such a conspiracy. With respect to the four distributors that refused to accept bids, it did not, and could not, show what successful bidding would have cost it. With respect to the others no attempt was made to show how much plaintiff lost by playing the pictures it did instead of the films on which it contends it submitted a high enough bid to entitle it to win. Plaintiff's apparent intention in offering evidence of a concerted refusal to permit effective bidding was only to help lay the basis for a further inference of a concerted refusal to play day and date.

If we were to accept plaintiff's contention that the Lynn and Salem theatres were not in substantial competition, the only connection it could claim between the two alleged conspiracies would be that it is more likely that a group of defendants have conspired against a plaintiff in one respect if they have conspired against it in another. This does not seem sufficient, with regard to the first alleged conspiracy, to constitute conscious parallelism "plus." [7] However, defendants cannot, with respect to the first conspiracy, have it that there was substantial competition between Salem and Lynn, and then take the opposite position as to the second. Having persuaded us, as previously stated, that the record compelled a finding of competition, we must consider the balance of the case in the same light. A substantial reason suggests itself why defendant distributors might, if plaintiff was a competitor of defendant theatres, want to discriminate against plaintiff, namely, the protection of their market. Evidence

---

7. Indeed, a showing that the defendants were not willing to have plaintiff bid for the films negates one possible motivation for the alleged conspiracy to refuse day and date availability, namely, to force plaintiff to bid for the films against the Lynn theatres.

solicited, it so happens, by the defendants from a representative of one distributor was that a shift of revenue from Lynn to Salem might be "a very decided disadvantage [to the distributor] in the fact that Lynn, like most theatres of that kind, are high overhead theatres, they have a high operating expense, and my experience has shown that sometimes it wouldn't take too much of a drop of revenue to put the theatre in very bad condition, almost to the point of going out of business * * * Well, it made no difference to me where we got the money [from film rentals] * * * It made a difference in the overall in the event that Salem, playing day and date, would affect our revenue in Lynn. It made a difference in that respect. The possibility of jeopardizing our position with Lynn, jeopardizing it to the extent that the amount of business that was lost would possibly eliminate that theatre as a substantial source of revenue for our company."

■ There is, however, no point in pursuing this matter. The majority of the court is of opinion that the defendants' divergent responses to the "bid or negotiate" letter show such a departure from parallelism, conscious or otherwise, as not to constitute an adequate "plus" factor. They believe that the ambiguity of this letter,[8] must be resolved against the writer, particularly when it is the alleged fulcrum of an anti-trust claim, and that there was an unmet burden upon the plaintiff to show that the defendants' varying responses were not *bona fide*, ei-

ther as to their understanding, or as to being a concerted refusal. They point to the fact that there was at the time a "split of product" arrangement between plaintiff and another Salem theatre, as a result of which plaintiff was not exhibiting films of two of these distributors, and that plaintiff should have stated affirmatively that it would abandon this arrangement to the extent that it was able to secure the first suburban run. The writer of this opinion disagrees, believing that the jury was the one which should have resolved the ambiguity in the "bid and negotiate" letter, that plaintiff's intent to abandon its split-of-product arrangement was implicit, and that the jury could have found that all defendants consciously and concertedly, though by different routes, refused the plaintiff's request to bid in order to benefit Lynn.[9] However, competitive bidding aside, the court is unanimous in believing that placing the plaintiff behind Lynn was plainly commercially justified and that there is nothing else to support an affirmative finding of illegal conspiracy. Consequently, plaintiff must be regarded as just another exhibitor commercially disappointed in not receiving better treatment, as in Winchester Theatre Co. v. Paramount Film Distributing Corp., 1 Cir., 1963, 324 F.2d 652.

We have considered all of plaintiff's evidentiary points. No error appears that could affect the basis of this decision.

Affirmed.

---

8. "Gentlemen:—

"The Naumkeag Theatres Company hereby requests that film be made available for the Paramount Theatre, Salem, twenty-one (21) days after Boston showing.

"We make this request because experience indicates we are being damaged by our competitors in this general area. It is clear that they have an unfair advantage over us in that you make film available to them many days ahead of our theatre.

"This is especially true of the situation in Lynn. Our grosses have com-

pared favorably with Lynn even when film has been made available to both cities at the same time. Given the opportunity to bid, our theatre is capable of matching or exceeding the grosses of other theatres in our competitive area.

"Could we hear from you on this matter as soon as possible?"

9. It would seem clear that Lynn would not be, and could not be expected to be, benefited in any worth while amount unless all distributors refrained from effectively compelling it to bid.