Carl E. **PERSON** and Christian Thee, Plaintiffs,

v.

NEW YORK POST CORPORATION, Defendant.

No. 76 C 1217.

United States District Court, E. D. New York.

Feb. 22, 1977.

3. 15 U.S.C. § 1 (1970).

Carl E. Person, pro se.

Richard J. Prentiss, Jr., New York City, for plaintiff Christian Thee.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant, by Morris B. Abram, and William B. Pollard, III, New York City.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This federal action arises out of plaintiffs' unsuccessful effort to publish a "tombstone advertisement," that is, a brief announcement of a securities offering, in a major New York daily newspaper, the defendant New York Post Corporation (the "Post"). The case is presently before the court on (1) plaintiffs' motion for a preliminary injunction requiring the Post to publish their advertisement or to refrain from publishing all tombstone advertisements, and (2) defendant's motions for dismissal of various claims in the complaint and for summary judgment on antitrust claims alleged therein. For the reasons which follow, plaintiffs' motion is denied and defendant's motions are granted.

On June 22, 1976 Person submitted the tombstone advertisement for the proposed offering with a copy of the offering circular to the Post, among other widely read New York newspapers and magazines.[1] The Post and other newspapers rejected the advertisement [2] allegedly as not being suitable for their readers. Thereafter plaintiffs brought this action only against the Post, alleging causes of action under the securities, civil rights and antitrust laws as more fully described below.

The thrust of the complaint, briefly stated, is that the officers, employees, attorneys and others of the Post have conspired together, and the Post has conspired with the other major newspapers, to screen proposed securities offerings and to publish only those meeting their standards of investment suitability. This selective publication policy allegedly favors major corporations and governmental agencies, prevents small businesses and persons such as plaintiffs from raising capital and consequently threatens the free enterprise system. As part of this editorial policy, the Post allegedly selectively publishes tombstone ads and slants news stories in favor of corporations who are, presently or prospectively, large advertisers. The public, it is asserted, has no knowledge of this deceptive editorial policy.

### Preliminary Injunction Motion

■ Plaintiffs' motion for a preliminary injunction runs squarely against the wall of freedom of the press. Couching the requested restraint in terms of a ban on discriminatory tombstone advertising renders it no less a restraint. A court may no more tell a privately owned newspaper what not to print than what to print. *Miami Herald Publishing Company v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974). That commercial advertising is involved makes no difference. As the Court pointed out in *Miami Herald,*

"A newspaper is more than a passive receptacle or conduit for news, comment *and advertising.* The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—wheth-

---

1. These included the *New York Times, Wall Street Journal, New York Law Journal, Staten Island Advance* and seven financial magazines. Second Amended Complaint, ¶ 8.

The proposed tombstone read as follows:

This advertisement is neither an offer to sell nor a solicitation of an offer to buy any of these securities. The offer is made only by the Offering Circular.

*NEW ISSUE*

1000,000 Shares, with Maximum Contingent Compound Interest of 25% Per Year; $5.00 Par Value; Redeemable and Callable; in the Lawsuit

CHRISTIAN THEE v. GENERAL MILLS INC.,
GENERAL MILLS FUN GROUP, INC.
(formerly named
PARKER BROTHERS, INC.)
and
MARVIN GLASS & ASSOCIATES

---

PRICE: $5.00 PER SHARE

---

Copies of the Offering Circular may be obtained from the undersigned only in states in which the undersigned is qualified to act and in which the Offering may be legally distributed.

CHRISTIAN THEE
76 State Street
Brooklyn, N.Y. 11201
(212) 834–1513

2. Except the New York Daily News which published the Tombstone on July 23, 1976.

er fair or unfair—constitute the exercise of editorial control and judgment.

It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time." *Id.* at 258, 94 S.Ct. at 8240 (footnote omitted and emphasis supplied).

Essentially, plaintiffs' claims are no different from those rejected in *Chicago Joint Board, Amalgamated Clothing Workers of America, AFL–CIO v. Chicago Tribune Co.,* 435 F.2d 470 (7 Cir. 1970). In that case it was urged that "if a newspaper accepts any editorial advertising it must publish all lawful editorial advertisements tendered to it for publication at its established rates." *Id.* at 478. There a labor union sought access to four newspapers controlled by defendant Chicago Tribune for union advertisements explaining a campaign against imported clothing sold by Marshall Field & Co., a large advertiser in such newspapers. In affirming summary judgment against the union the court pointed out:

> "The Union's right to free speech does not give it the right to make use of the defendants' printing presses and distribution systems without defendants' consent." *Id.*

Like plaintiffs here, the union stressed the public interest which may be affected. Nonetheless the court added:

> "We glean nothing from the constitutional guarantees, or from the decisions expository thereof, which suggests that the advertising pages of a privately published newspaper may so be pressed into service against the publisher's will either in the context of a labor dispute to which the

publisher is not a party or otherwise." *Id.*

In that state of the law there is no likelihood of success on the merits and plaintiffs' motion for a preliminary injunction must be denied.[3]

### Dismissal Motion

In a patent attempt to circumvent the Post's first amendment freedom, plaintiffs seek to restrain and hold the Post liable as a violator of securities regulation and civil rights statutes because of its refusal to publish the tombstone ad. Defendant has moved to dismiss such claims under Rule 12, F.R.Civ.P., on grounds that (1) plaintiffs fail to state claims upon which relief can be granted, and (2) plaintiffs in any event lack standing to assert them.

Since the standing issue pervades five separate claims to which defendant's motion is directed, some preliminary discussion of plaintiffs' theory of their right to sue is in order. Characterizing himself as a "political litigator," plaintiff Person maintains he has standing as a private attorney general engaged in activities to enforce federal laws.[4] Similarly, plaintiff Thee, who is pursuing an antitrust suit against General Mills,[5] urges that he too derives standing as a private attorney general. Person describes political litigation as private litigation to enforce constitutional and civil rights and federal statutes when the government fails or, in its discretion, declines to act. He argues that private attorneys general must be able to maintain such actions on their own to effectuate Congressional intent in enactment of those laws, and that courts have recognized the concept of the private attorney general to encourage important policy enforcement.

---

3. *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1359 (2 Cir. 1976); *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2 Cir. 1973); *Checker Motors Corp. v. Chrysler Corp.,* 405 F.2d 319, 323 (2 Cir. 1969).

4. The right to transfer partial interests in the claim in suit as a means of financing a litigation is the subject of another lawsuit. *Person*

*v. Association of the Bar of the City of New York,* 75 C 1473. See 414 F.Supp. 139 (E.D.N. Y.1976).

5. *Thee v. General Mills, Inc., et al.,* 75 C 1554, an antitrust and copyright action alleging piracy of Thee's idea for a game originally submitted to Parker Brothers, Inc., now owned by General Mills.

However that may be, courts have also recognized that no matter how imperative is the public interest sought to be vindicated, a plaintiff, in order to have standing to sue, must demonstrate more than abstract concern. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). It is fundamental that, assuming justiciability of the claim, the constitutional limitations of federal court jurisdiction imposed by Article III require a plaintiff to demonstrate some concrete injury to himself, likely to be redressed by a favorable decision. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). See *Warth v. Seldin, supra; O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). A private litigant, in order to have standing to sue, must have a personal stake in the outcome of the action. His personal desire to act as a surrogate for governmental action is no substitute.

With those considerations in mind we turn to an analysis of plaintiffs' several claims to determine whether claims for relief are stated and whether plaintiffs have met the test of standing.

### 1. *Investment Advisers Act*

Plaintiffs first claim that the Post's refusal to publish Thee's tombstone ad evidences a policy of selective publication of tombstone ads based on its evaluation of the merits of a proposed offering. Those ads the Post publishes, they allege, are for securities it recommends to its readers for purchase. According to plaintiffs this places the Post in the position of an undisclosed investment adviser, which has violated the Investment Advisers Act because it is unregistered, section 203 of the Act, 15 U.S.C. § 80b–3, and has furnished mislead-

ing and deceptive investment advice to its readers, sections 206 and 208 of the Act, 15 U.S.C. §§ 80b–6, –8.

An investment adviser as defined in § 202 of the Act

"means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities; *but does not include . . . (D) the publisher of any bona fide newspaper . . . of general and regular circulation;* . . .." 15 U.S.C. § 80b–2(a)(11) (emphasis supplied).

Plaintiffs' own papers herein show that the Post has been published daily except Sunday since it was founded in 1801.[6] And even if that were not the case, such a widely known fact would be a fit subject for judicial notice. The plain truth is that newspapers of general circulation like the Post are not meant to be subject to the Investment Advisers Act and no amount of casuistic ratiocination can make it otherwise.[7]

In view of the court's conclusion that the Investment Advisers Act does not apply to the Post, the question of plaintiffs' standing to sue does not require extended discussion. There being no explicit right of action under the Act, any private remedy must be implied and then only in favor of intended beneficiaries of the Act. *Bolger v. Laventhol, Krekstein, Horwath & Horwath,* 381 F.Supp. 260, 262 (S.D.N.Y. 1974). *Accord, Jones v. Equitable Life Assurance Society of U. S.,* 409 F.Supp. 370, 372 (S.D. N.Y. 1975); *The Fund of Funds, Limited v.*

---

**6.** Plaintiffs' Notice of Motion dated July 2, 1976, Exh. D.

**7.** Nothing said in *SEC v. Wall Street Transcript Corp.,* 422 F.2d 1371 (2 Cir.), *cert. denied,* 398 U.S. 958, 90 S.Ct. 2170, 26 L.Ed.2d 542 (1970), is to the contrary. Indeed, as defendant correctly points out, the court there simply upheld the right of the S.E.C. to enforce a subpoena

issued in an investigation to determine whether the named publication was an investment adviser or a bona fide newspaper. Only the S.E. C.'s power to investigate was upheld; no determination was made as to the status of the publication with respect to the exclusion enjoyed by regular newspapers such as the Post.

*Vesco,* Current CCH Fed.Sec.L.Reptr. ¶ 95,-644 (S.D.N.Y. 1976). *Cf. J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

■ Plaintiffs obviously do not qualify as intended beneficiaries, for they are not "persons who paid for investment advice" or are in need of protection "from dishonest and self-dealing advisers." *Bolger, supra,* at 263. As the anti-fraud provision of the Act makes clear, 15 U.S.C. § 80b–6, the legislative purpose was to protect investors, not issuers of securities such as plaintiffs here. They received no advice from the Post and cannot assert a claim based upon alleged injury to the Post's readers at large. In short, plaintiffs fail to state any claim cognizable under the Investment Advisers Act. *Cf. Independent Investors Protective League v. SEC,* 495 F.2d 311 (2 Cir. 1974).

## 2. The Securities Act of 1933

■ The complaint fails to spell out, by way of fact or legal claim, how the Post violated the Securities Act of 1933. That Act, which deals with disclosure and·fraud in the sale of securities, was designed to protect purchasers of securities from deceptive practices in the offering or sale of securities and to enforce that policy by civil or criminal liability depending on the circumstances. The remedy of civil liability against the offeror or seller of a security in favor of "the person purchasing such security," § 12 of the Act, 15 U.S.C. § 77*l,* is available only to purchasers of securities. *Schoenbaum v. Firstbrook,* 268 F.Supp. 385 (S.D.N.Y. 1967), *aff'd,* 405 F.2d 200 (2 Cir. 1968), *rev'd on other grounds,* 405 F.2d 215 (2 Cir. 1968) (*en banc*), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *Greater Iowa Corp. v. McLendon,* 378 F.2d 783 (8 Cir. 1967); *Davidge v. White,* 377 F.Supp. 1084 (S.D.N.Y. 1974); *Duffy v. Ranger Securities Corp.,* 346

F.Supp. 1401 (E.D.N.Y. 1972); *Leonard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 64 F.R.D. 432 (S.D.N.Y. 1974). Plaintiffs, not being purchasers, state no claim under the Act.[8]

■ The second possible ground for relief under the 1933 Act is a criminal provision prohibiting fraud in connection with "the offer or sale of any securities." § 17 of the Act, 15 U.S.C. § 77q. Better authority holds that no civil remedy should be implied under § 17 because of the detailed and precise remedies specifically created in the other provisions of the Act. *Welch Foods Inc. v. Goldman, Sachs & Co.,* 398 F.Supp. 1393, 1399–1401 (S.D.N.Y. 1974). *Accord, Dyer v. Eastern Trust & Banking Co.,* 336 F.Supp. 890, 903 (D.Me. 1971).· See *Architectural League of New York v. Bartos,* 404 F.Supp. 304, 313 (S.D.N.Y. 1975). But even if a private right of action may be implied under § 17, the same reasoning pertaining to express civil liability impels the conclusion that only defrauded purchasers of securities are protected. See *Superintendent of Insurance of State of New York v. Bankers Life & Casualty Co.,* 430 F.2d 355, 359 (2 Cir. 1970) (dictum), *rev'd on other grounds,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

■ No "offer or sale of any securities" is alleged to have occurred here in which plaintiffs could have been defrauded. And plaintiffs cannot bolster their 1933 Act claims by relying on their self-appointed private attorney general status. See discussion on standing *ante.* Nor do the provisions authorizing discretionary conduct of the SEC or the Attorney General, see, *e.g.,* § 20(b) of the Act, 15 U.S.C. § 77t, afford them any basis for maintaining their private cause of action. Hence their claims under the 1933 Act must be dismissed for failure to state a claim for relief.

---

**8.** A tombstone ad, moreover, is specifically excepted by the Act, § 2(10), and SEC Rule 134 from the definition of prospectus. Such an advertisement may state "from whom a written prospectus meeting the requirements of [§ 10] may be obtained and, in addition, does no more than identify the security, state the price thereof, state by whom orders will be executed" and other information prescribed by the SEC.

### 3. Securities and Exchange Act of 1934

As in their claim under the 1933 Act, plaintiffs' complaint alleges no more than a jurisdictional basis, § 27 of the 1934 Act, 15 U.S.C. § 78aa, and a bare-faced allegation of violation of the Act. If anything, plaintiffs seek relief for claimed violations of § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder. But once again no claim may be maintained.

■ Only actual purchasers or sellers of securities may avail themselves of the private civil damage remedy implied from the proscription of fraud "in connection with the purchase or sale" of securities by § 10(b) and Rule 10b-5. *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2 Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). The *Birnbaum* rule, longstanding in this circuit and recently reaffirmed by the Supreme Court, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), precludes plaintiffs' claim here. They have not been defrauded as an actual purchaser or seller of a security.

Plaintiffs' allegation that the Post's selective tombstone publication policy is a scheme or artifice to defraud does not relate to any transaction *inter se* but rather to conduct of the Post affecting the public at large. In order to maintain any claim—whether for money damages or for injunctive relief—some concrete injury connected with the purchase or sale of a security must be alleged. Plaintiffs fail to do so. The claim under the 1934 Act is fatally defective and must be dismissed.

### 4. Ku Klux Klan Act

■ Aside from charging manipulation of the capital markets, plaintiffs claim that the Post's refusal to run their tombstone ad abridged their first amendment rights to free speech and association. The statute they rely upon is a provision of the Ku Klux Klan Act of 1871, which attaches civil liability to those who conspire

"for the purpose of impeding, . . . obstructing or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protections of the laws." 42 U.S.C. § 1985(2).

Plaintiffs confront two obstacles in stating a claim under that Act. First, they fail to indicate the existence of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Meeting that requirement is as essential under § 1985(2) as it is under subsection 3, which the *Griffin* Court considered. *Hahn v. Sargent*, 523 F.2d 461, 469 (1 Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Johnson v. NBC Inc.*, 356 F.Supp. 904 (E.D.N.Y. 1973); *McIntosh v. Garofalo*, 367 F.Supp. 501, 502 (W.D.Pa. 1973); *Phillips v. Singletary*, 350 F.Supp. 297, 302 (D.S.C. 1972).

■ The only class of which plaintiff Person purports to be a member is that of "attorneys seeking to publicly finance the antitrust litigation of his client." Plaintiff Thee places himself in the class of plaintiffs in antitrust suits seeking to publicly finance litigation. Most broadly, both plaintiffs claim that defendant discriminates against private attorneys general who attempt to enforce their rights against persons with whom defendant does business.

Plaintiffs' proposed classes simply are not cognizable under the Act. Although there may be other private attorneys general, plaintiffs do not claim the Post's alleged discriminatory refusal to publish the tombstone ad was directed at them because of their membership in the suggested classes. *Cf. Arnold v. Tiffany*, 487 F.2d 219 (9 Cir. 1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974). In contrast, the conspiracy in *Griffin, supra*, was inspired by the race of the plaintiffs. No such class characteristic exists here.

Secondly, plaintiffs do not allege any invidiously discriminatory motive on the part

of the Post. Instead they raise claims under the first amendment, not an intent to deny equal protection. *Bergman v. Stein,* 404 F.Supp. 287, 295 (S.D.N.Y. 1975). See *Murphy v. Mt. Carmel High School,* 543 F.2d 1189 (7 Cir. 1976).

Accordingly, the cause of action under 42 U.S.C. § 1985(2) must be dismissed for failure to state a claim for relief.

### 5. *42 U.S.C. § 1986*

Plaintiffs' claim under 42 U.S.C. § 1986 is dependent upon establishing a claim under § 1985 and therefore must fall with it.

### *Summary Judgment Motion*

### 1. *Sherman Act § 1*

■ The complaint alleges in substance a conspiracy engaged in a concerted refusal to deal with plaintiffs, a *per se* violation of section 1 of the Sherman Act, 15 U.S.C. § 1. Only the Post is named as a defendant. Named as co-conspirators, although not as defendants, are other major newspapers which declined to publish the tombstone and officers, directors, agents, employees and attorneys of the Post. Defendant has moved for summary judgment, albeit conceding that the elements of a section 1 claim have been pleaded, but strongly arguing that facts supportive of plaintiffs' claim are nonexistent, primarily because no conspiracy has been, or can be, shown.[9]

The following facts do not appear to be in genuine dispute. On June 22, 1976 plaintiffs' tombstone ad and prospectus were submitted to Richard LeLong in the Post's department of financial advertising. LeLong stated he would have to discuss the matter with the Post's advertising committee and did discuss the advertisement with Lawrence Goldreyer, Financial Advertising Director. The next day LeLong telephoned Person's office and advised that the Post would not publish Thee's advertisement. LeLong and Goldreyer aver that their refusal to accept the ad was made in the exercise of their independent business judgment.

Plaintiff alleges that identical requests to publish their tombstone ad were submitted not only to the *Post,* but also to the *New York Times,* the *Wall Street Journal,* the *New York Law Journal,* the *Staten Island Advance* and seven other business magazines and that they were turned down on similar grounds. The tombstone ad ran, however, on July 23, 1976 in the *Daily News.*

The whole thrust of plaintiffs' group boycott claim is the alleged conspiracy among the officers, directors and attorneys of the Post.[10] In detail, plaintiffs recount statements of the Post's employees upon receipt of the tombstone advertisement as to its merits, reasons why the Post's attorneys would support the Post's refusal to publish such an ad, and the interest of the Post in

**9.** In order to prove a claim of concerted refusal to deal or joint boycott, plaintiffs must establish (1) a conspiracy, combination or agreement on the part of defendant and others (2) not to publish plaintiffs' tombstone ad announcing a public offering of securities, and (3) that they were injured pursuant to the enforcement of the policy. *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.,* 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); *Associated Press v. United States,* 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945); *Fashion Originators' Guild of America, Inc. v. FTC,* 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941).

Defendant also argues that plaintiff Person does not have standing to assert a § 1 claim because he did not seek to publish the tombstone ad on his own behalf, the Post did not

refuse to deal with Person and he could suffer no injury from its conduct. Person asserts he was to receive the proceeds from the securities sold as trustee and therefore the tombstone would be published on his behalf as well as that of his client, Thee. He also asserts injury to his antitrust litigation practice because of added overhead and expense not immediately reimbursed by his client.

**10.** Plaintiffs strenuously argue that the Post's attorneys have a specific, personal interest in defeating plaintiffs in this lawsuit because they also represent defendants in another antitrust action in which Person is attorney for the plaintiffs and for which Person also hopes to obtain public financing. These facts fail to show a group boycott of plaintiffs.

protecting its major advertisers from the competition of small businesses. From this perspective, plaintiffs' allegations of concerted activity among the metropolitan newspapers must be taken to be an afterthought, a collateral and purely makeweight argument.

 To the extent that plaintiffs' theory of concerted activity is that the Post conspired with its own officers, directors, employees, agents or attorneys, their § 1 claim may not be maintained, for, as a matter of law, the Post would then be conspiring with itself to perform a single, unilateral act. *Morton Buildings of Nebraska, Inc. v. Morton Buildings, Inc.,* 531 F.2d 910, 917 (8 Cir. 1976); *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914–15 (5 Cir. 1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953).

 As to plaintiffs' theory that the Post conspired with the other metropolitan newspapers, it is clear that they must show more than unilateral conduct, more than parallel conduct and even more than consciously parallel conduct on the part of several newspapers to establish a *concerted* refusal to deal with them. *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.,* 346 U.S. 537, 541, 74 S.Ct. 257, 98 L.Ed. 273 (1954); *Modern Home Institute, Inc. v. Hartford Accident & Indemnity Co.,* 513 F.2d 102, 110 (2 Cir. 1975). To defeat defendant's summary judgment motion, plaintiffs must come forward with some facts indicating the likelihood of concerted activity among the Post and the other newspapers, to refuse to publish their tombstone advertisement.

The bare assertion that facts essential to show the existence of the conspiracy lie within the exclusive control of the Post does not bring plaintiffs within the application of rule 56(f), F.R.Civ.P., *United States v. Donlon,* 355 F.Supp. 220, 225 (D.Del.), *aff'd,* 487 F.2d 1395 (3 Cir. 1973). In order to invoke rule 56(f):

> "the opposing party should present his affidavit showing that the knowledge or control of the facts is exclusively or largely with the moving party and describe his attempts to obtain those facts. The mere averment of exclusive knowledge or control of the facts by the moving party is not adequate: the opposing party must show to the best of his ability what facts are within the movant's exclusive knowledge or control; what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules; and that he is desirous of taking advantage of these discovery procedures." 6 J. Moore, *Federal Practice* § 56.24 at 56–1432 (2 ed. 1976).

A searching examination of plaintiff's papers reveals a total failure to make a showing adequate to sustain the test of rule 56(f). Person's affidavit refers the court to plaintiffs' 9(g) statement of facts in dispute, required to be filed by the General Rules of this court, "for a statement of the essential facts (based on information and belief, for the most part) which I plan to prove." Affid. ¶ 2. The sole alleged, "facts" are the following: (1) that, upon information and belief, the Post discussed with other publishers its refusal to publish Thee's tombstone and these communications were to arrange a boycott of any tombstone advertising by Person's clients (¶ 26); and (2) that advertising managers of metropolitan newspapers, including the Post, upon information and belief, meet as directors of the Better Business Bureau concerning standards of advertising acceptability (¶ 40).

The second "fact" is easily disposed of. The Post's employees plaintiffs identify were no longer employed by the Post when the tombstone ad was submitted, nor did the Post belong to the Better Business Bureau. Thus, this "fact" is insufficient to raise an inference of a group boycott.

 The first "fact" is but a conclusory allegation. Plaintiffs have not described any attempts to obtain the necessary facts to support their allegation nor have they set forth what steps they plan to take should their motion be granted. In addition they have not made the best effort to present facts which were not within the exclusive

control of the Post. For example, they do not reveal in any affidavit what transpired when they submitted their ad to the other newspapers. They do not even refer to their attempts to publish the ad in the other newspapers anywhere in their 9(g) statement of facts in dispute.

Indeed, upon close reading of the paragraph in question, plaintiffs do not explicitly assert that the alleged communications among the newspapers actually resulted in an agreement to boycott the ad but rather "were to arrange" such a boycott. Thus, even upon information and belief, plaintiffs do not present facts sufficient to show that a group boycott occurred. The court will not countenance an antitrust claim to be maintained absent any significant probative evidence tending to support the complaint, *First National Bank v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

■ One further point requires discussion. Simply put, it is whether the newspapers' joint action, assuming arguendo such occurred, resulted in a restraint of trade required to state a claim under the Sherman Act. The antitrust laws were enacted for the protection of competition. See *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). Yet Thee, a prospective advertiser, does not compete with the newspapers. Nor could the newspapers' action have been intended to prevent Thee from competing with them in the dissemination of information.

The Sherman Act is aimed primarily at combinations having commercial objectives. *Klor's v. Broadway-Hale Stores,* 359 U.S. 207, 213 n.7, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). Exactly then, what was the objective of any agreement? Plaintiffs name as the object of the conspiracy the newspapers' protection of their major advertisers to the detriment of those small businesses who would compete with the giants of the market and those individuals who seek to vindicate their rights against large corporations through use of legal process. These objectives, however, are realized not by combination among the newspapers but rather by agreements between a newspaper and the corporations it is allegedly in the newspapers' interest to favor. Proof of such a conspiracy is not the aim of this lawsuit. Plaintiffs, therefore, have not shown any restraint of trade resulting from the alleged "refusal to deal" with them.

■ Additionally, plaintiffs would be required to prove antitrust injury, that is, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp v. Pueblo Bowl-O-Mat, Inc.,* —— U.S. ——, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977); *GAF Corp. v. Circle Floor Co., Inc.,* 463 F.2d 752 (2 Cir. 1972), *cert. dismissed,* 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973). For plaintiffs to have suffered damages requires not merely a showing that they were injured by a refusal to deal with them, but that they would have been successful in marking the securities as a result of publishing the tombstone ad in the newspapers. Nothing suggests such a showing could be made.

The section 1 claim is therefore vulnerable to summary dismissal on the merits.

### 2. Sherman Act § 2

■ Plaintiffs' monopolization claim is raised solely by inference from references to section 2 of the Sherman Act, 15 U.S.C. § 2, in the jurisdictional statement of the complaint (¶ 1), to an alleged effect on interstate commerce (¶ 12), and to claimed product and geographic markets consisting of newspapers in New York City suitable for publication of tombstone advertisements (¶ 13). These statements are insufficient to plead a section 2 claim. The complaint fails to allege either that the *Post* possesses monopoly power, see *United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966), or has attempted to monopolize with a dangerous probability of success, see *Swift & Co. v. United States,* 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518 (1905). Nor are any facts supportive of the claim or of personal injury to plaintiffs alleged. The monopoly claim is thus manifestly without merit.

*Attorneys Fees*

The motions of both parties for the award of attorneys fees are denied. This suit challenging the seemingly arbitrary action of the *Post* in refusing to publish a tombstone ad cannot be viewed as frivolous even though the court has found the plaintiffs' arguments unconvincing and has dismissed all the claims. See *Klein v. Shields & Company,* 470 F.2d 1344, 1347 (2 Cir. 1972).

Accordingly, plaintiffs' motions are in all respects denied and defendant's motions to dismiss the complaint and for summary judgment on the antitrust claims are granted.

SO ORDERED.