**Leonard DARVIN, Plaintiff,**

v.

**BACHE HALSEY STUART SHIELDS, INC., Milton Jacobson and Joseph Canciglia, Defendants.**

**No. 78 Civ. 3127.**

United States District Court,
S. D. New York.

Oct. 29, 1979.

Kraver & Martin, New York City, for plaintiff by Richard M. Kraver, New York City, of counsel.

Grandefeld & Goodman, New York City, for defendants by Dominick J. Dorata, New York City, of counsel.

## MEMORANDUM AND ORDER

### WHITMAN KNAPP, District Judge.

This is an action brought under sections 11, 12(2), 15 and 17(a) of the Securities Act of 1933, as amended, 15 U.S.C. §§ 77k, 77*l* (2), 77*o* and 77q(a); sections 10(b), 15(c) and 20(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78j(b), 78*o* (c) and 78t(a); Rules 10b–5 and 15cl–2, 17 C.F.R. §§ 240.10b–5 and 240.15cl–2, promulgated under 15 U.S.C. §§ 78j(b) and 78*o* (c), respectively; and the common law of the State of New York. Jurisdiction is based on section 22(a) of the 1933 Securities Act, as amended, 15 U.S.C. § 77v(a); section 27 of the 1934 Securities Exchange Act, as amended, 15 U.S.C. § 78aa; and the doctrine of pendent jurisdiction. Before us is a motion for summary judgment brought by defendants under Rule 56(b) of the Federal Rules of Civil Procedure. We find that there is no genuine issue as to any material fact and that defendants are entitled to summary judgment as a matter of law.

### Facts

Drawing, as we must on defendants' motion for summary judgment, every reasonable inference in plaintiff's favor, we find the facts as presented by plaintiff to be as follows: Plaintiff is a seventy year old attorney who has recently retired as Code Administrator for the Comic Magazine Association of America. In February of 1976, he purchased 500 shares of common stock of Lykes-Youngstown Corporation ("Lykes") for the sum of $9,293 through his securities account at the brokerage firm of Paine, Webber, Jackson & Curtis, Inc. for long-term investment purposes in contemplation of retirement. In March of that year, he met with defendant Milton Jacobson, a vice president at defendant Bache Halsey Stuart Shields, Inc. ("Bache"), another prominent securities broker. At that meeting, Jacobson made substantially the following representations to plaintiff: Bache had a superior research department; he, Jacobson, had many years experience in handling accounts similar to plaintiff's; he would personally supervise plaintiff's account; and he would combine his experience with Bache's research reports to further plaintiff's conservative investment objectives and act as his investment advisor. Based on these representations, plaintiff opened an account at Bache and transferred his 500 shares of Lykes common stock from his Paine Webber account to the Bache account. Shortly after plaintiff's initial meeting with Jacobson, the latter introduced him to his assistant, defendant Joseph Canciglia. In February of 1977, based on Jacobson's and Canciglia's recommendations, plaintiff pur-

chased 600 shares of Lykes preferred stock for the sum of $19,509.20.

In August of that year, Canciglia telephoned plaintiff and advised him to liquidate his Lykes stock because of the significant financial difficulties that Lykes was encountering, and to purchase stock in another company instead. Plaintiff refused to do so because he expected Lykes to recover its profitability, restore its full dividend to stockholders, and regain its market value. He expressed to Canciglia his belief that the government would intervene to assist the steel industry and that Lykes' management was eliminating its unprofitable operations.

On September 29, 1977, Canciglia again telephoned plaintiff to urge him to sell his Lykes holdings. He read to plaintiff a research report that he represented to have been prepared by Bache which expressed grave doubts as to Lykes' future. The report put forward the "preliminary conclusion" that Lykes "will not survive in its present form as a steel maker," and that "common and preferred shareholders are not likely to recover their investment." It foresaw little hope that another company would acquire Lykes' steel-making operations as a going concern, and recommended the sale of Lykes common and preferred issues. In that conversation, Canciglia further represented to plaintiff that: Bache had done a thorough investigation into Lykes' operations and found no indications as to any merger possibility; Lykes was going out of business; the only prudent action for plaintiff to take was to salvage some of the equity in his Lykes securities by selling them at the market price prevailing on that day; his Lykes stock had to be liquidated to avoid his being wiped out, and he would be "crazy to hold it"; and other leading brokerage firms were recommending to their best customers the immediate

sale of Lykes common and preferred stock. As a result of that conversation, plaintiff authorized Canciglia to sell his 500 shares of Lykes common stock and his 600 shares of Lykes preferred stock for the aggregate sum of $8,903.39. Within several days thereafter, because of Lykes' impending merger as a going concern with another company, LTV, Inc., the market price of Lykes common and preferred stock began to rise substantially and has "kept going up practically ever since." [1]

### Discussion

Plaintiff now asks this court to award him damages because the Bache research report and Canciglia were apparently in error as to Lykes' future. He claims that he would not have agreed to sell his Lykes stock but for Canciglia's allegedly fraudulent misrepresentations. He alleges that defendants knew or should have known on September 29 of the forthcoming merger between Lykes and LTV, Inc., and that Canciglia had no basis for claiming that other brokerage firms were recommending the sale of Lykes stock at that time. He therefore asserts in his complaint that "[t]he misrepresentations [regarding Lykes] made in Bache's research report and expanded by Canciglia when he spoke to plaintiff [on September 29] were materially false and misleading and known to be so when made or were made with reckless disregard for the facts." Plaintiff further alleges that defendants' solicitation of his consent to sell his Lykes holdings was actionable because of defendants' failure to exercise reasonable care or skill in connection with the solicitation as well as the actual sale of his Lykes stock.

Plaintiff seeks relief under various sections of the 1933 Securities Act and the 1934 Securities Exchange Act. Primarily,[2]

1. We take judicial notice that according to The New York Times Index 1977, at p. 762, the possibility of a merger between Lykes and LTV Corp. was first mentioned in The New York Times on November 5, 1977.

2. In addition, plaintiff alleges that Bache and Jacobson "controlled" Canciglia's actions with-

in the meaning of section 15 of the 1933 Act, 15 U.S.C. §§ 77o, and section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), and that they are consequently liable to him for Canciglia's allegedly wrongful conduct. Since we have determined, as will appear, that plaintiff cannot maintain an action under the 1933 Act, and that Canciglia cannot be held liable to him under the 1934

these are sections 12(2) and 17(a) of the 1933 Act, 15 U.S.C. §§ 77*l*(2) and 77q(a); and sections 10(b) and 15(c) of the 1934 Act, 15 U.S.C. §§ 78j(b) and 78*o*(c), together with Rules 10b–5 and 15cl–2, 17 C.F.R. §§ 240.10b–5 and 240.15cl–2, promulgated thereunder, all of which impose liability on persons dealing in securities who, in the course of such dealings, make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

 We note first of all that plaintiff is not a purchaser but a seller of securities, and consequently does not meet the requirements for a plaintiff under sections 12(2) and 17(a) of the 1933 Act. Only a defrauded purchaser may maintain an action under these provisions. The 1933 Act was designed to protect purchasers of securities from deceptive practices in the offering or sale of securities. Thus, section 12 provides that an offeror or seller of a security who has engaged in such deceptive practices "shall be liable to the person *purchasing* such security from him." (Emphasis added) And section 17(a) similarly refers only to

deceptive acts or omissions by persons engaged in "the offer or sale of any security."[3] *See, e. g., Person v. New York Post Corp.* (E.D.N.Y.1977) 427 F.Supp. 1297, 1304, *affirmed* (2d Cir.) 573 F.2d 1294; *Leonard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (S.D.N.Y.1974) 64 F.R.D. 432; *Davidge v. White* (S.D.N.Y.1974) 377 F.Supp. 1084, 1087–88; *In re Penn Central Securities Litigation* (E.D.Pa.1973) 357 F.Supp. 869, *affirmed* (3d Cir.) 494 F.2d 528; *Superintendent of Insurance of State of New York v. Bankers Life Ins. Co.* (2d Cir. 1970) 430 F.2d 355, 359, *reversed on other grounds* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128; *Globus v. Law Research Service, Inc.* (2d Cir. 1969) 418 F.2d 1276, 1286, *cert. denied* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93; *Schoenbaum v. Firstbrook* (S.D.N.Y. 1967) 268 F.Supp. 385, *affirmed* (2d Cir.) 405 F.2d 200, *reversed in part on other grounds* (2d Cir. en banc) 405 F.2d 215, *cert. denied sub nom. Manley v. Schoenbaum,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219. It follows that the claims asserted under sections 12(2) and 17(a) must be dismissed as insufficient on their face.

 We now turn to plaintiff's claim under sections 10(b) and 15(c) of the Securities

Act, there is no need for us to discuss the issue of secondary liability under the federal securities laws. Plaintiff also asserts a claim under section 11 of the 1933 Act, 15 U.S.C. § 77k. Since section 11 deals exclusively with registration statements which are not at issue in the case before us, this claim is specious.

**3.** There exists serious doubt whether a private cause of action may be implied under § 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), which on its face merely makes it unlawful for sellers of securities to engage in fraudulent or deceptive transactions, or to omit to state material facts. In *Blue Chip Stamps v. Manor Drug Stores* (1975) 421 U.S. 723, 734 n. 6, 95 S.Ct. 1917, 44 L.Ed.2d 539, the Supreme Court specifically declined to decide that question. "Better authority holds that no civil remedy should be implied under § 17 because of the detailed and precise remedies specifically created in the other provisions of the Act." *Person v. New York Post Corp.* (E.D.N.Y.1977) 427 F.Supp. 1297, 1304, *affirmed* (2d Cir.) 573 F.2d 1294. *See also, Establissement Tomis v. Shearson Hayden Stone, Inc.* (S.D.N.Y.1978) 459 F.Supp. 1355,

1361; *Allegaert v. Perot* (S.D.N.Y.1978) 78 F.R.D. 427, 429; *Schlansky v. United Merchants and Mfgrs., Inc.* (S.D.N.Y.1977) 443 F.Supp. 1054, 1060; *Scarfarotti v. Bache & Co., Inc.* (S.D.N.Y.1977) 438 F.Supp. 199, 207; *Architectural League of New York v. Bartos* (S.D. N.Y.1975) 404 F.Supp. 304, 313; *Welch Foods Inc. v. Goldman, Sachs & Co.* (S.D.N.Y.1974) 398 F.Supp. 1393, 1399; *Globus v. Law Research Service, Inc.* (2d Cir. 1969) 418 F.2d 1276, 1283–87, *cert. denied* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93; *SEC v. Texas Gulf Sulphur* (2d Cir. 1968) 401 F.2d 833, 867 (Friendly, J., concurring), *cert. denied sub nom., Coates v. SEC,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756; *but see, e. g., Valles Salgado v. Piedmont Capital Corp.* (D.P.R.1978) 452 F.Supp. 853, 857; *Newman v. Prior* (4th Cir. 1975) 518 F.2d 97, 99. Since plaintiff in the action before us would not qualify as a plaintiff under § 17(a) even if a civil remedy were available under it, we need do no more than indicate that the problem exists, and that it is "as yet undecided in this Circuit." *Wigand v. Flo Tek, Inc.* (2d Cir. 1979) 609 F.2d 1028, 1033.

Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78o(c), and Rules 10b–5 and 15cl–2, 17 C.F.R. §§ 240.10b–5 and 240.15cl–2, promulgated thereunder. The Supreme Court's decision in *Ernst & Ernst v. Hochfelder* (1976) 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 established that scienter is a prerequisite for violations of section 10(b) and Rule 10b–5. More recently the Court of Appeals for this Circuit has held that reckless disregard of truth or falsity may constitute scienter for such purposes. *Rolf v. Blyth, Eastman Dillon & Co., Inc.* (2d Cir. 1978) 570 F.2d 38, 44. It is clear, however, that mere negligence does not amount to scienter. *See Hochfelder, supra.* Rule 15cl–2, meanwhile, states that the "manipulative, deceptive, or other fraudulent device or contrivance" prohibited in section 15(c)(1) refers to any untrue statement or omission of material facts "made with knowledge or reasonable grounds to believe that it is untrue or misleading." Consequently, we find that the same scienter standard applies to sections 10(b) and 15(c), and Rules 10b–5 and 15cl–2.

 Plaintiff makes numerous conclusory allegations as to defendants' fraudulent or deceptive conduct. However, he has not alleged any facts that would support a finding of intent to defraud or reckless disregard of the truth on their part in their dealings with him. Mere conclusory allegations of fraud are insufficient as a matter of law to state a claim under sections 10(b) and Rule 10b–5 or under section 15(c). *See, e. g., Segal v. Gordon* (2d Cir. 1972) 467 F.2d 602, 607; *Shemtob v. Shearson, Hammill & Co.* (2d Cir. 1971) 448 F.2d 442, 444; *Carroll v. Bear, Stearns & Co.* (S.D.N.Y.1976) 416 F.Supp. 998, 1000.

An examination of plaintiff's allegations discloses that, with two exceptions, all the supposed misrepresentations by defendants upon which he claims to have relied were statements of opinion. Plaintiff alleges no

objective fact even to suggest that any of these opinions were not honestly held, or that any of them were recklessly arrived at. His allegations might, at the very most, support a conclusion that defendants had been somehow negligent in failing to obtain more accurate information.

The two misrepresentations of fact claimed to have been made were (a) that Bache had thoroughly investigated Lykes' operations, and (b) that other leading brokers were recommending that Lykes' securities be sold. However, plaintiff is unable to suggest a scintilla of evidence that either of these statements of fact was untrue.[4]

In brief, this case presents but another situation illustrating the principle that "[t]he federal securities laws are not a panacea for all losses suffered in the stock market upon the recommendation of brokers. A recommendation that goes awry does not make out a claim under Rule 10b–5." *Van Alen v. Dominick & Dominick, Inc.* (S.D.N.Y.1976) 441 F.Supp. 389, 400, *affirmed* (2d Cir.) 560 F.2d 547. *See also, Wiener v. Oppenheimer & Co.* (S.D.N.Y. 1979) CCH Fed.Sec.L.Rep. ¶ 96,764 at 95,-002.

Consequently, defendants' motion for summary judgment with respect to the federal claims must be granted. There being no diversity, the pendent state claims must be dismissed for want of subject matter jurisdiction.

SO ORDERED.

---

4. At oral argument, plaintiff's counsel expressed confidence in his ability to come forward with evidence establishing the falsity of defendant Canciglia's representation that "other leading brokerage firms" had been advising the sale of Lykes securities around September 29, 1977. It was accordingly announced that decision would be withheld for a period of twenty days to permit plaintiff to file the affidavit of a witness prepared to furnish such evidence. Forty-five days have since passed, and no affidavit has been forthcoming.