## THEATRE ENTERPRISES, INC. *v.* PARAMOUNT FILM DISTRIBUTING CORP. ET AL.

No. 19.   Argued November 30, December 1, 1953.—
Decided January 4, 1954.

*Philip B. Perlman* and *Holmes Baldridge* argued the cause for petitioner. With them on the brief were *Edwin P. Rome* and *Sol C. Berenholtz.*

*Bruce Bromley* argued the cause for the Paramount Film Distributing Corporation et al., and *Ferdinand Pecora* argued the cause for Warner Bros. Pictures Distributing Corporation et al., respondents. With them on the brief were *Milton Handler, R. Dorsey Watkins* and *J. Cookman Boyd, Jr. John Fletcher Caskey* entered an appearance for the Twentieth Century-Fox Film Corporation, respondent.

MR. JUSTICE CLARK delivered the opinion of the Court.

Petitioner brought this suit for treble damages and an injunction under §§ 4 and 16 of the Clayton Act,[1] alleging that respondent motion picture producers and distributors[2] had violated the antitrust laws[3] by conspiring to restrict "first-run"[4] pictures to downtown Baltimore theatres, thus confining its suburban theatre to subsequent runs and unreasonable "clearances."[5] After hear-

---

[1] 38 Stat. 731, 737, 15 U. S. C. §§ 15, 26.

[2] Respondents are: Paramount Film Distributing Corp., Loew's Inc., RKO Radio Pictures, Inc., Twentieth Century-Fox Film Corp., Universal Film Exchanges, Inc., United Artists Corp., Warner Bros. Pictures Distributing Corp., Warner Bros. Circuit Management Corp., Columbia Pictures Corp.

[3] Sections 1 and 2 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. §§ 1, 2, and § 2 of the Clayton Act, 38 Stat. 730, as amended, 15 U. S. C. § 13. Petitioner has dropped the allegation of a Clayton Act violation.

[4] "Runs are successive exhibitions of a feature in a given area, first-run being the first exhibition in that area, second-run being the next subsequent, and so on . . . ." *United States* v. *Paramount Pictures, Inc.,* 334 U. S. 131, 144–145, n. 6 (1948).

[5] "A clearance is the period of time, usually stipulated in license contracts, which must elapse between runs of the same feature within a particular area or in specified theatres." *United States* v. *Paramount Pictures, Inc.,* 334 U. S. 131, 144, n. 6 (1948).

ing the evidence a jury returned a general verdict for respondents. The Court of Appeals for the Fourth Circuit affirmed the judgment based on the verdict. 201 F. 2d 306. We granted certiorari. 345 U. S. 963.

Petitioner now urges, as it did in the Court of Appeals, that the trial judge should have directed a verdict in its favor and submitted to the jury only the question of the amount of damages. Alternatively, petitioner claims that the trial judge erred by inadequately instructing the jury as to the scope and effect of the decrees in *United States* v. *Paramount Pictures, Inc.*, the Government's prior equity suit against respondents.[6] We think both contentions are untenable.

The opinion of the Court of Appeals contains a complete summary of the evidence presented to the jury. We need not recite that evidence again. It is sufficient to note that petitioner owns and operates the Crest Theatre, located in a neighborhood shopping district some six miles from the downtown shopping center in Baltimore, Maryland. The Crest, possessing the most modern improvements and appointments, opened on February 26, 1949. Before and after the opening, petitioner, through its president, repeatedly sought to obtain first-run features for the theatre. Petitioner approached each respondent separately, initially requesting exclusive first-runs, later asking for first-runs on a "day and date" basis.[7] But respondents uniformly rebuffed petitioner's efforts and adhered to an established policy of restricting first-runs in Baltimore to the eight downtown theatres. Admittedly there is no direct evidence of illegal agree-

---

[6] 66 F. Supp. 323 (1946), 70 F. Supp. 53 (1946), reversed and remanded in part, 334 U. S. 131 (1948), 85 F. Supp. 881 (1949), affirmed, 339 U. S. 974 (1950).

[7] A first-run "day and date" means that two theatres exhibit a first-run at the same time. Had petitioner's request for a day-and-date first-run been granted, the Crest and a downtown theatre would have exhibited the same features simultaneously.

ment between the respondents and no conspiracy is charged as to the independent exhibitors in Baltimore, who account for 63% of first-run exhibitions. The various respondents advanced much the same reasons for denying petitioner's offers. Among other reasons, they asserted that day-and-date first-runs are normally granted only to noncompeting theatres. Since the Crest is in "substantial competition" with the downtown theatres, a day-and-date arrangement would be economically unfeasible. And even if respondents wished to grant petitioner such a license, no downtown exhibitor would waive his clearance rights over the Crest and agree to a simultaneous showing. As a result, if petitioner were to receive first-runs, the license would have to be an exclusive one. However, an exclusive license would be economically unsound because the Crest is a suburban theatre, located in a small shopping center, and served by limited public transportation facilities; and, with a drawing area of less than one-tenth that of a downtown theatre, it cannot compare with those easily accessible theatres in the power to draw patrons. Hence the downtown theatres offer far greater opportunities for the widespread advertisement and exploitation of newly released features, which is thought necessary to maximize the over-all return from subsequent runs as well as first-runs. The respondents, in the light of these conditions, attacked the guaranteed offers of petitioner, one of which occurred during the trial, as not being made in good faith. Respondents Loew's and Warner refused petitioner an exclusive license because they owned the three downtown theatres receiving their first-run product.

The crucial question is whether respondents' conduct toward petitioner stemmed from independent decision or from an agreement, tacit or express. To be sure, business behavior is admissible circumstantial evidence from which the fact finder may infer agreement. *Interstate Circuit,*

*Inc.* v. *United States,* 306 U. S. 208 (1939); *United States* v. *Masonite Corp.,* 316 U. S. 265 (1942); *United States* v. *Bausch & Lomb Optical Co.,* 321 U. S. 707 (1944); *American Tobacco Co.* v. *United States,* 328 U. S. 781 (1946); *United States* v. *Paramount Pictures, Inc.,* 334 U. S. 131 (1948). But this Court has never held that proof of parallel business behavior conclusively establishes agreement or, phrased differently, that such behavior itself constitutes a Sherman Act offense. Circumstantial evidence of consciously parallel behavior may have made heavy inroads into the traditional judicial attitude toward conspiracy;[8] but "conscious parallelism" has not yet read conspiracy out of the Sherman Act entirely. Realizing this, petitioner attempts to bolster its argument for a directed verdict by urging that the conscious unanimity of action by respondents should be "measured against the background and findings in the *Paramount* case." In other words, since the same respondents had conspired in the *Paramount* case to impose a uniform system of runs and clearances without adequate explanation to sustain them as reasonable restraints of trade, use of the same device in the present case should be legally equated to conspiracy. But the *Paramount* decrees, even if admissible, were only prima facie evidence of a conspiracy covering the area and existing during the period there involved. Alone or in conjunction with the other proof of the petitioner, they would form no basis for a directed verdict. Here each of the respondents had denied the existence of any collaboration and in addition had introduced evidence of the local conditions surrounding the Crest operation which, they contended, precluded it from being a successful first-run house. They also attacked the good faith of the guaranteed offers of the

---

[8] Rahl, Conspiracy and the Anti-Trust Laws, 44 Ill. L. Rev. 743 (1950).

petitioner for first-run pictures and attributed uniform action to individual business judgment motivated by the desire for maximum revenue. This evidence, together with other testimony of an explanatory nature, raised fact issues requiring the trial judge to submit the issue of conspiracy to the jury.

Petitioner next contends that the trial judge, when instructing the jury, failed to give sufficient weight to the *Paramount* decrees. The decrees were admitted in evidence pursuant to § 5 of the Clayton Act,[9] which provides that a final judgment or decree rendered against a defendant in an equity suit brought by the United States under the antitrust laws "shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto . . . ." Exercising his discretion to choose the precise manner of explaining a decree to the jury,[10] the trial judge instructed that:

> ". . . [T]hese same defendants had, at a time previous to the opening of the Crest Theatre, conspired together in restraint of trade in violation of these same Anti-Trust laws, in restricting to themselves first run and in establishing certain clearances in numerous places throughout the United States. Thus, these proven facts, I instruct you, become *prima facie* evidence in the present case, which the plaintiff may use in support of its claim that what the defendants have done since those decrees, in the present case in Baltimore, is within the prohibition of those earlier decrees. However, this is only *prima*

---

[9] 38 Stat. 731, 15 U. S. C. § 16; Note, 65 Harv. L. Rev. 1400 (1952).

[10] *Emich Motors Corp.* v. *General Motors Corp.*, 340 U. S. 558 (1951), 61 Yale L. J. 417 (1952).

*facie* evidence. There was not before the Court in the prior case the present factual situation which is before you now with respect to Baltimore theatres. Therefore, it is still necessary in the present case, in order for the plaintiff to recover, for it to prove to your satisfaction, by the weight of the credible evidence, that these defendants, or some of them, have conspired in an unreasonable manner to keep first run exhibitions from the plaintiff, or have conspired to restrict plaintiff to clearances which are unreasonable."

These instructions, petitioner argues, were "so superficial and so limited as to deprive petitioner of any of the benefits conferred upon it" by § 5.

We cannot agree. The trial judge instructed, in effect, that the *Paramount* decrees alone could not support a recovery by petitioner; additional evidence was required to relate the presumed *Paramount* conspiracy to Baltimore and to the claimed damage period. The reasons for this are clear. The *Paramount* decrees did not rest on findings, nor were the findings based on evidence, of a particular conspiracy concerning restrictions on runs and clearances in Baltimore theatres; yet such a conspiracy is the nub of plaintiff's claim. The *Paramount* case involved a conspiracy found to exist as of 1945, which was enjoined no later than June 25, 1948; [11] but

[11] The 1946 decree of the three-judge District Court enjoined the defendants, *inter alia,* from conspiring with respect to runs and clearances. The decree was stayed by MR. JUSTICE REED pending the appeal to this Court. The stay expired, by its own terms, when the Court rendered its decision on May 3, 1948. But this decision, remanding the case to the District Court for further consideration, in no way altered the lower court's findings as to runs and clearances. 334 U. S. 131, 144–148; 85 F. Supp. 881, 885, 897. Hence, the injunctive provisions of the 1946 decree concerning runs and clearances were left intact. Following this Court's decision, the order on mandate was entered in the District Court on June 25, 1948.

the conspiracy alleged here involves a claimed damage period running from February 1949 to March 1950. Indeed, the relevancy of *Paramount* to the instant case is slight. We need not pass on respondents' contention that petitioner was entitled to no benefit at all from the earlier decrees. We merely hold that petitioner was entitled to no greater benefit than the trial judge gave it.

*Affirmed.*

MR. JUSTICE BLACK would reverse, being of opinion that the trial judge's charge to the jury as to the burden of proof resting on petitioner deprived it of a large part of the benefits intended to be afforded by the prima facie evidence provision of § 5 of the Clayton Act.

MR. JUSTICE DOUGLAS withdrew from the case after its submission and took no part in this decision.