

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2007

# Cosmetic Gallery Inc v. Schoeneman Corp

Precedential or Non-Precedential: Precedential

Docket No. 05-3679

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Cosmetic Gallery Inc v. Schoeneman Corp" (2007). *2007 Decisions.* Paper 653.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/653

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3679

_____

COSMETIC GALLERY, INC.
d/b/a THE SALON AT IMAGE BEAUTY,

Appellant

v.

SCHOENEMAN CORPORATION
d/b/a SCHOENEMAN BEAUTY SUPPLY;
F. DALE SCHOENEMAN, individually,
jointly, severally and in the alternative

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 01-cv-4896
(Honorable Robert B. Kugler)

_____

Argued April 24, 2007

Before:  SCIRICA, *Chief Judge*, FUENTES
and ALARCÓN[*], *Circuit Judges*.

(Filed: July 19, 2007)

STEPHEN J. DeFEO, ESQUIRE (ARGUED)
Brown & Connery
360 Haddon Avenue
Westmont, New Jersey 08108
        Attorney for Appellant

BURT M. RUBLIN, ESQUIRE (ARGUED)
Ballard, Spahr, Andrews & Ingersoll
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
        Attorney for Appellees

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

At issue in this civil antitrust suit alleging a group boycott is whether plaintiff offered sufficient evidence to survive

[*]The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial Circuit, sitting by designation.

defendants' motion for summary judgment. We will affirm the grant of summary judgment.

## I.

Plaintiff Cosmetic Gallery, Inc. is a New Jersey corporation that owns and operates a hair salon and retails hair care products and professional beauty supplies. Defendant Schoeneman Corporation is a Pennsylvania corporation, owned and operated by co-defendant F. Dale Schoeneman, and does business as Schoeneman Beauty Supply, a wholesale distributor of beauty supplies to salons in Pennsylvania, New Jersey, Delaware and West Virginia.

Cosmetic Gallery filed this suit in New Jersey Superior Court, alleging violations of the New Jersey Antitrust Act, N.J. Stat. Ann. § 56:9-3, statutory and common law unfair competition, N.J. Stat. Ann. § 56:4-1, wrongful refusal to deal, tortious interference with contractual relations, and tortious interference with prospective economic advantage. Defendants removed to the United States District Court for the District of New Jersey on diversity grounds.[1]

---

[1]The District Court had jurisdiction under 28 U.S.C. § § 1332 and 1441. We have jurisdiction over this appeal of a final order of the District Court under 28 U.S.C. § 1291. We review a district court's decision to grant summary judgment *de novo*, "employing the same legal standards the [district] court was required to use." *Intervest v. Bloomberg*, 340 F.3d 144, 158 (3d Cir. 2003).

## II.

This suit arises from the business of selling and distributing certain lines of hair-care products that are designated as "salon-only" lines and products. Manufacturers of salon-only lines and products routinely place restrictions on distributors that limit resale only to professional hairstylists or hair salons, making these the only outlets from which an end use customer can buy the exclusive products. The restrictions, which effectively limit the availability of the products, serve to increase the cachet and prestige of these salon-only product lines, and enable their sale as exclusive premium products. Although they differ, distribution agreements typically require that in order to purchase salon-only products from a distributor, a retailer must have a salon license and must derive some minimum amount of revenue from salon business, and that salon services—as opposed to product sales—must account for between 30 percent and 50 percent of its revenue. Many agreements also prohibit distribution to any salons or persons who have engaged in "diversion" of salon-only products. In this context, diversion is the sale of salon-only products outside the permitted channels expressly provided in manufacturer-distributor contracts, such as sales by a distributor to a retailer who is not connected to a professional hair salon or licensed hairstylists. The distribution agreements often include sanctions and penalties, including termination of distribution contracts, should the products be diverted outside authorized channels.

Cosmetic Gallery, a corporation owned and operated by

Charles Eisenberg, is a retailer of hair care products. Cosmetic Gallery also operated two retail stores in southern New Jersey under the name Image Beauty. Cosmetic Gallery asserts it intended to convert or open three facilities under a different business model that included both salon and retail sales services. To that end, Eisenberg had a functioning salon in one of the Image Beauty locations, though it accounted for less than 5 percent of that store's revenue; the other two salons never materialized.

As part of its intended business model, Cosmetic Gallery sought contracts with several distributors of salon-only hair-care lines and products doing business with independent salons and professional hair stylists in southern New Jersey. Among these distributors were Schoeneman Beauty Supply, Inc., East Coast Salon Services, Emiliani Enterprises, and Goldwell Mid-Atlantic. In March 2001, Cosmetic Gallery signed a salon agreement with Emiliani Enterprises to buy Paul Mitchell products. But Emiliani Enterprises soon canceled the agreement because the company had learned Cosmetic Gallery was selling diverted Paul Mitchell products. Cosmetic Gallery contends this cancellation was at defendants' direction.

Unable to secure contracts for salon-only brands from the area distributors, Cosmetic Gallery sued Schoeneman Beauty Supply and F. Dale Schoeneman, its owner, alleging the defendants led and enforced a group boycott of Cosmetic Gallery among hair care product distributors. In addition to Schoeneman Beauty Supply, Schoeneman also owns fifty percent of Renee

5

Beauty Salons, Inc., which owns and operates twelve salon stores in New Jersey under the name Beauty Bar. Just one of these salons is located near a Cosmetic Gallery Image Beauty store—in a neighboring town in southern New Jersey—but that Beauty Bar salon did not open until after the events challenged by Cosmetic Gallery, and the nearby Cosmetic Gallery store did not have competing salon services. Beauty Bar, which combines both retail and salon services, sells salon-only brands of hair products in its stores. Those products are purchased by Beauty Bar from Schoeneman Beauty Supply and other distributors, including East Coast Salon Services, Emiliani Enterprises, and Goldwell Mid-Atlantic.

Cosmetic Gallery contends Schoeneman orchestrated a group boycott in order to prevent it from competing with Beauty Bar. Cosmetic Gallery alleges Schoeneman Beauty Supply and other distributors who had an economic interest in the success of Beauty Bar because it was a big customer consequently had an interest in keeping out Image Beauty as a competitor. Cosmetic Gallery further contended Schoeneman Beauty Supply wanted to exclude Image Beauty from competing with it because Cosmetic Gallery had a history of success in undercutting Beauty Bar's prices for hair care products and sundries. But defendants point out that Cosmetic Gallery and Eisenberg had never been party to a distribution contract for salon-only products, and furthermore, Eisenberg had a lengthy history of selling diverted salon-only products. Not only did diverted products sold by Eisenberg include some of the brands distributed by defendants, but Eisenberg was actively engaged in selling these diverted products

6

during the time of the events from which this suit sprouted.

Eisenberg offered what he contends was both direct and circumstantial evidence of the conspiracy.[2] The District Court

---

[2]Cosmetic Gallery offered the following as "direct" evidence of the alleged conspiracy:

(1) Schoeneman's "Do Not Sell" memo to his own sales staff describing Eisenberg as a known diverter, and instructing that no product should be sold to him;

(2) Schoeneman's handwritten notes of a conversation with Tom Campbell of Matrix, in which Campbell suggested that if Schoeneman Beauty Supply did sell to Cosmetic Gallery, that it should mark products with secondary codes (such as with invisible ink), and that he should require Eisenberg to reveal where he had bought salon-only products in the past;

(3) Schoeneman's communications with Patricia Urban, who worked for an investigative consulting firm, in which Schoeneman asked about Eisenberg's eligibility for salon-only purchasing;

(4) Schoeneman's Oct. 8, 2002, e-mail to Charles Domroe, of L'Oreal, in which he inquired whether L'Oreal had also identified Eisenberg as a known diverter; and,

(5) Eisenberg's deposition testimony that Greg Mancini, from distributor Goldwell Mid-Atlantic, told him Schoeneman had "reached out" to distributors and was "boycotting" Eisenberg.

Additionally, Cosmetic Gallery offered the following as "circumstantial" evidence of the conspiracy:

7

found Cosmetic Gallery's evidence insufficient to support its claims, and granted summary judgment in favor of the defendants.

## III.

This case was brought under New Jersey law, principally under N.J. Stat. Ann. § 56:9-3, which provides: "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, in this State, shall be unlawful." In applying § 56:9-3, New Jersey courts look to the federal

---

(1) Schoeneman's interest in Beauty Bar gave it an economic interest in a boycott of Cosmetic Gallery;

(2) Other distributors had an interest in Beauty Bar's success, giving them an economic incentive to boycott Cosmetic Gallery;

(3) Cosmetic Gallery had historic success in undercutting defendants' pricing for sundries;

(4) Schoeneman had decided not to sell to Cosmetic Gallery from the outset;

(5) Schoeneman contacted others in the industry through industry consultant Urban;

(6) Schoeneman's conversation with Mancini advised of a boycott;

(7) The timing of events was more than coincidental;

(8) Schoeneman was duplicitous during discovery; and

(9) Schoeneman's reasons for not selling to Cosmetic Gallery were pretextual.

courts' interpretation of the similar wording of the Sherman Act.[3] N.J. Stat. Ann. § 56:9–18;[4] *Patel v. Soriano*, 848 A.2d 803, 826 (N.J. Super. Ct. App. Div. 2004). On appeal, Cosmetic Gallery contends the District Court erred in granting summary judgment in favor of the defendants.

Summary judgment is only appropriate where the court is satisfied "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Where an illegal conspiracy is alleged, the complaining party must establish "that there is a genuine issue of material fact as to whether [the accused party] entered into an illegal conspiracy that caused respondents to suffer a cognizable injury." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); Fed. R. Civ. P. 56(e). This requires

---

[3]Section 1 of the Sherman Act provides:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

15 U.S.C. § 1 (2000).

[4]N.J.S.A. § 56:9-18 provides that New Jersey's antitrust act "shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it."

both a showing of injury that resulted from the illegal conduct and that the issue of fact be "genuine"; in other words, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87 (quoting Fed. R. Civ. P. 56(e)).

> Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. . . .
>
> It follows from these settled principles that if the factual context renders respondents' claim implausible—if the claim is one that simply makes no economic sense—respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary.

*Id.* at 587 (internal quotations and citations omitted).

Furthermore, "[t]o survive a motion for summary judgment . . . [an antitrust] plaintiff seeking damages for a violation of § 1 [of the Sherman Act] must present evidence that tends to exclude the possibility" that the alleged conspirators acted independently. *Id.* at 588 (internal quotation marks omitted). Thus, a plaintiff must offer enough evidence that "the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed respondents." *Id*.

The Supreme Court has cautioned that fact finders should not be permitted "to infer conspiracies when such inferences are

10

implausible, because the effect of such practices is often to deter procompetitve conduct." *Id.* at 593 (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 762–64 (1984)).

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court summarized the current requirements for antitrust plaintiffs:

> An antitrust conspiracy plaintiff with evidence showing nothing beyond parallel conduct is not entitled to a directed verdict, *see* [*Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537 (1954)]; proof of a § 1 conspiracy must include evidence tending to exclude the possibility of independent action, *see* [*Monsanto*]; and at the summary judgment stage a § 1 plaintiff's offer of conspiracy evidence must tend to rule out the possibility that the defendants were acting independently, *see* [*Matsushita*].

127 S. Ct. at 1964 (internal citations abbreviated).

There is often a fine line between legitimate business practices and unlawful concerted action, and direct evidence—the smoking gun—of illegal conspiracy may not be available. Thus it is essential to consider all of the evidence proffered to determine whether it is sufficient to withstand a motion for summary judgment.

Cosmetic Gallery proffered both direct and circumstantial evidence of conspiracy. For ease of analysis, we will first

11

consider Cosmetic Gallery's direct evidence.

"Direct" evidence must evince with clarity a concert of illegal action. We have previously noted several examples of direct evidence of conspiracy:

> (1) a direct threat to the plaintiff from a competitor that if he went into business his competitors would do anything they could to stop him, including cutting prices or supplies, *see* [*Rossi v. Standard Roofing, Inc.*, 156 F.3d 452 (3d Cir. 1998)];
> (2) advising distributors that a supplier would cut off access if the distributor failed to maintain a certain price level, *see Monsanto*, 465 U.S. at 765. . .;
> (3) a memorandum produced by a defendant conspirator detailing the discussions from a meeting of a group of alleged conspirators, *see Arnold Pontiac-GMC, Inc., v. Budd Baer, Inc.*, 826 F.2d 1335, 1338 (3d Cir. 1987); and
> (4) a public resolution by a professional association recommending that its members withdraw their affiliation with an insurer, *see Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 815 F.2d 270, 273 (3d Cir. 1987).

*Intervest v. Bloomberg*, 340 F.3d 144, 162–63 (3d Cir. 2003).

Here, as noted, Cosmetic Gallery contends the following constituted direct evidence of conspiracy:

12

(1) Schoeneman's "Do Not Sell" memo to Schoeneman Beauty Supply sales staff regarding Eisenberg;

(2) Schoeneman's handwritten notes of a conversation with Campbell;

(3) Schoeneman's communications with Urban;

(4) Schoeneman's October 8, 2003 e-mail to L'Oreal; and

(5) Eisenberg's deposition testimony that Mancini told him Schoeneman had "reached out" to distributors and was "boycotting" Eisenberg.[5]

The District Court determined that the first four pieces of

---

[5]The only evidence offered by Eisenberg of a conspiracy between Emiliani Enterprises and the defendants is Eisenberg's interpretation of a sequence of events and a phone conversation he alleges he had with Greg Mancini, then a representative of Goldwell Mid-Atlantic. In deposition testimony, Eisenberg stated that Mancini told him: "[Schoeneman is] boycotting you, you're not going to get any product from Dale or anybody else." However, Mancini, in his deposition testimony, contradicted Eisenberg's testimony, stating that he did not tell Eisenberg that Schoeneman was boycotting Cosmetic Gallery, but did tell him "you've been a thorn in people's sides for many years, why would you expect people to want to do business with you now?" Mancini testified about Eisenberg's long history of selling salon-only products that had been diverted outside the contractually determined sales channels.

listed evidence required several inferences to serve as direct proof of a conspiracy among Schoeneman Beauty Supply, Schoeneman, East Coast, Emiliani Enterprises, and Goldwell Mid-Atlantic to prevent Cosmetic Gallery from competing with Beauty Bar. The District Court concluded this evidence lacked the clarity of the direct evidence proffered in other antitrust cases. We agree.

As for the Eisenberg deposition evidence, the District Court found, assuming it was not inadmissible hearsay, this was direct evidence only of an opportunity to conspire and of consciously parallel behavior (Schoeneman communicated with other distributors; Schoeneman did not want to sell to Cosmetic Gallery; Goldwell Mid-Atlantic knew that Schoeneman did not want to sell to Cosmetic Gallery). But the District Court determined that neither direct evidence of an opportunity to conspire nor of consciously parallel behavior constituted direct evidence of concerted action, and was at best circumstantial evidence.

We have previously noted that proof of opportunity alone is insufficient to sustain an inference of conspiracy, and that consciously parallel behavior is circumstantial evidence of concerted action. *See Petruzzi's IGA Supermarkets, Inc., v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1235 (3d Cir. 1993). We agree with the District Court that this evidence is, at best,

14

circumstantial, but not direct, evidence of conspiracy.[6]

Cosmetic Gallery offered a variety of circumstantial evidence, which is described earlier. *See* note 2, *supra*. As noted, in reviewing a grant of summary judgment, our task is to determine whether "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," i.e., whether there was a genuine issue for trial. *Matsushita*, 475 U.S. at 587. Evidence that does not exclude the possibility of independent action or that relies on a factual context that is implausible is insufficient to withstand summary judgment. *Id.*

Cosmetic Gallery's circumstantial evidence falls short of

---

[6]The District Court analyzed this case following the rubric laid out in *Intervest*, which called for an examination of direct and circumstantial evidence of conspiracy, and, if lacking, a review of evidence under the conscious parallelism test. Cosmetic Gallery contends this case should have been analyzed, instead, under *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452 (3d Cir. 1998), which dealt with a group boycott. But this confuses the difference between *Rossi* and *Intervest*. The principal difference is not that *Rossi* involved a group boycott, but rather that the evidence presented by the plaintiff in *Rossi* constituted direct evidence of a conspiracy, and that the evidence was circumstantial in *Intervest*. The proper analysis on this summary judgment motion was, therefore, whether the evidence proffered was sufficient, either directly or circumstantially, to show concerted action.

15

excluding the possibility that the distributors acted independently. The only evidence proffered to show any communication between alleged conspirators is Eisenberg's account of his conversation with Mancini, already detailed. As the District Court noted, even if this is not inadmissible hearsay, it is at best evidence of an opportunity to conspire, not of concerted action. The other evidence, particularly in light of Eisenberg's apparent reputation in the industry, does not exclude the possibility of independent action by the distributors. Furthermore, Cosmetic Gallery's circumstantial evidence, taken as a whole, does not create a factual context from which a reasonable inference could be drawn that would prove conspiracy.

In the alternative, circumstantial evidence can be used to demonstrate consciously parallel action by defendants. This entails demonstrating (1) the defendants' behavior was parallel; (2) the defendants were aware of each other's conduct and that this awareness was an element in their decision-making process; and (3) certain plus factors, which must include that the actions were contrary to the defendants' economic interests, and that there was some motivation to enter into such an agreement. *Intervest*, 340 F.3d at 165.

The Supreme Court's most recent statement on the sufficiency of antitrust pleading standards—an antecedent question to the one before us—reiterates that an antitrust complaint must include "enough factual matter (taken as true) to suggest that an agreement was made. . . . [I]t simply calls for

16

enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."[7] *Twombly*, 127 S. Ct. at 1965.

*Twombly* also signaled the vitality of *Matsushita* and *Monsanto,* noting the two cases "have made it clear that neither parallel conduct nor conscious parallelism, taken alone, raise the necessary implication of conspiracy." *Id.* at 1968 n.7. Nevertheless, although it "falls short of 'conclusively establish[ing] agreement or . . . itself constitut[ing] a Sherman Act offense,'" a showing of consciously parallel behavior may be admissible as circumstantial evidence. *Id.* at 1964 (quoting *Theatre Enterprises,* 346 U.S. at 540–41) (alterations in original).

---

[7]*Twombly* continues:

> A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a §1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief.

127 S. Ct. at 1966 (internal quotation marks omitted).

17

The District Court, following our *Intervest* opinion, also analyzed Cosmetic Gallery's circumstantial evidence for consciously parallel behavior by the alleged conspirators.[8]  *Intervest*, 340 F.3d at 163–66.

The District Court concluded Cosmetic Gallery's circumstantial evidence did not show conscious parallelism.  We agree.  Even if the action of not selling to Cosmetic Gallery were parallel among distributors, Cosmetic Gallery's own evidence asserts and demonstrates Schoeneman had determined not to sell to Cosmetic Gallery from the outset, before any of the alleged acts took place.  *See* note 2, *supra.*  This would negate awareness of parallel action on the part of Schoeneman that was "an element in [his] decision-making processes."  *Intervest,* 340 F.3d at 165.

---

[8]Cosmetic Gallery contends conscious parallelism only applies in price-fixing cases.  It often appears in this context, but several cases in this Circuit have applied conscious parallelism analysis to alleged boycotts and refusals to deal.  *See Intervest*, 340 F.3d at 165–66; *Houser v. Fox Theatres Management Corp.*, 845 F.2d 1225, 1232 (3d Cir. 1988); *Schoenkopf v. Brown & Williamson Tobacco Corp.*, 637 F.2d 205, 208–09 (3d Cir. 1980); *Venzie Corp. v. United States Mineral Prods. Co.*, 521 F.2d 1309, 1314–16 (3d Cir. 1975).  At least one other court of appeals has specifically applied conscious parallelism analysis to group boycotts. *Merck-Medco Managed Care v. Rite Aid Corp.*, 1999 WL 691840, *8 (4th Cir. September 7, 1999).

Furthermore, we agree with the District Court there was insufficient evidence to show that refusal to sell to Cosmetic Gallery was contrary to Schoeneman's economic interest. Cosmetic Gallery's proffered evidence amounts to an assertion that its desire to buy product from Schoeneman was automatically in Schoeneman's economic interest. But this assertion ignores the purpose of salon-only branding and contracting, as well as the long-standing practice by the manufacturers and distributors of these products. The exclusivity of the products is the major component of their marketing strategy, cost, cachet, and profit. Thus, the simple fact that Cosmetic Gallery wanted to buy product is not enough to show Schoeneman acted contrary to his economic interest. *See, e.g.*, *Twombly*, 127 S. Ct. at 1973 (noting that firms do not expand without limit, nor do they enter every market that an outsider might consider to be profitable). Furthermore, Cosmetic Gallery offers no evidence that it even qualified to enter into a salon-only products contract, either because it no longer engaged in the resale of products diverted by others, or because it had sufficient salon-generated proceeds to satisfy the requirements of distributors. Finally, if Schoeneman Beauty Supply had agreed to distribute to Cosmetic Gallery, and Cosmetic Gallery were found either to be a diverter or otherwise unqualified to purchase salon-only brands, Schoeneman Beauty Supply risked major economic injury—cancellation of its contracts with other manufacturers—because of its association with Cosmetic Gallery. Cosmetic Gallery fails to demonstrate that Schoeneman's decision not to sell to Cosmetic Gallery was

19

against his or his company's economic interest.

Cosmetic Gallery's circumstantial evidence fails to show consciously parallel action by the alleged co-conspirators. The District Court properly granted summary judgment for the defendants.

IV.

Cosmetic Gallery contends that it was improperly required to show a role was played by a co-conspirator and that Schoeneman acted as a ringleader. But, as the District Court noted, regardless of the test used, the antitrust plaintiff bears the burden of proving "concerted action" (contract, combination or conspiracy with others), because "[u]nilateral activity by a defendant, no matter the motivation, cannot give rise to a section 1 violation." *Intervest*, 340 F.3d at 159. As noted, Cosmetic Gallery's evidence does not prove any concerted action, and, in fact, amounts to uncontested proof of unilateral activity by Schoeneman.

There was no error by the District Court.[9]

V.

We will affirm the grant of summary judgment.

---

[9]We have also reviewed Cosmetic Gallery's challenge to the District Court's grant of summary judgment on its various non-antitrust claims. We find Cosmetic Gallery's arguments on these claims to be without merit.