# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-3104

_____

In re: Crop Inputs Antitrust Litigation

------------------------------

Darren Duncan, Individually and on behalf of all others similarly situated; Jones Planting Co. III, On behalf of itself and all others similarly situated; Charles Lex; John C. Swanson, individually and on behalf of all others similarly situated; James Koch, doing business as Vienna Echo Farms; Melinda Budde, on behalf of herself and all others similarly situated; Randi Handwerk, on behalf of himself individually and all others similarly situated; John Vehrenkamp; Justin Pic; Dan Flaten, on behalf of himself individually and all others similarly situated; Ryan Bros., Inc., on behalf of themselves and all others similarly situated; Michael J. Ryan, on behalf of themselves and all others similarly situated; Leon Pfaff, on behalf of himself individually and all others similarly situated,

*Plaintiffs - Appellants*,

B. Carlson, on behalf of himself individually and all others similarly situated; Barbara Piper, Executrix of the Estate of Michael Piper, deceased, on behalf of herself and all others similarly situated,

*Plaintiffs,*

Jason Canjar, on behalf of himself and all others similarly situated, doing business as Yedinak Registered Holsteins,

*Plaintiff - Appellant*,

B & H Farming; Tyche Ag. LLC; Ceres Ag. LLC; Cedar Draw LLC; Little Omega,

*Plaintiffs,*

Eagle Lake Farms Partnership, individually and on behalf of all others similarly situated; Brad DeKrey; Tyler Schultz, on behalf of himself individually and all others similarly situated; Hapka Farms, Inc.; Amy Hapka; Beeman Berry Farm, LLC, Individually and on behalf of all others similarly situated; Wunsch Farms, Individually and on behalf of all others similarly situated; Kenneth Beck, on behalf of himself and all others similarly situated; Duane Peiffer, Individually and on behalf of all others similarly situated; Tom Burke, f/k/a Tom Burke Farms,

*Plaintiffs - Appellants*,

Keith Lyle Bailey, individually and as Trustee of the Effie Bailey Land Trust, on behalf of themselves and all similarly situated,

*Plaintiff*,

George Potzner, individually and on behalf of all others similarly situated; JSB Farms, LLC, individually and on behalf of all others similarly situated

*Plaintiffs - Appellants*,

Keith Lyle Bailey,

*Plaintiff*,

Mark Krieger; Krieger Family Farms, LLC,

*Plaintiffs - Appellants*.

v.

Bayer CropScience LP; Bayer CropScience Inc.; Corteva, Inc.; Cargill, Incorporated; BASF Corporation, a Delaware limited company for corporate parent BASF USA Holding LLC; Syngenta Corporation; Winfield Solutions, LLC; Univar Solutions USA, LLC., formerly known as Univar Solutions, Inc.; Federated Co-Operatives, Ltd.; CHS, Inc.; Nutrien AG Solutions, Inc.; Growmark, Inc., doing business as Farm Supply agent of FS; Simplot AB Retail Sub, Inc.,

-2-

formerly known as Pinnacle Agriculture Distribution, Inc.; Tenkoz, Inc.; Pioneer Hi-Bred International, Inc.; Growmark FS, LLC,

*Defendants - Appellees*.

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: November 18, 2025
Filed: April 6, 2026

——————————

Before COLLOTON, Chief Judge, SHEPHERD and ERICKSON, Circuit Judges.

——————————

COLLOTON, Chief Judge.

Several farms and farmers sued a group of manufacturers, wholesalers, and retailers, alleging that they conspired to obscure pricing data for "crop inputs"—seeds and crop-protection chemicals—thereby forcing the farmers to pay higher prices. *See* 15 U.S.C. § 1. The district court[1] determined that the complaint failed to state a claim for relief, and granted the defendants' joint motion to dismiss. *In re Crop Inputs Antitrust Litig.*, 749 F. Supp. 3d 992 (E.D. Mo. 2024). We affirm.

I.

This appeal arises from a complaint filed in the Southern District of Illinois in January 2021. The Judicial Panel on Multidistrict Litigation consolidated twenty-

———————————————

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

eight similar actions in the Eastern District of Missouri after concluding that they "involve common factual allegations about defendants' anticompetitive conduct, including a group boycott of electronic sales platforms and price fixing . . . of crop inputs." In September 2021, the plaintiffs filed a consolidated amended complaint.

The plaintiffs seek to represent a class and two subclasses consisting of persons and entities who purchased a crop input "as early as January 1, 2014" from the defendants or through the defendants' authorized retailers. The plaintiffs alleged that the defendants conspired to establish "a secretive distribution process that keeps Crop Inputs prices inflated at supracompetitive levels," in violation of § 1 of the Sherman Act, the Racketeer Influenced and Corrupt Organizations Act (RICO), and various state laws. The plaintiffs seek injunctive relief and damages.

The plaintiffs allege that e-commerce sales platforms for crop inputs rapidly gained success among farms and farmers starting in 2014. These platforms allegedly threatened the market position of defendants through two means: by directly selling crop inputs and by increasing transparency for product prices. The platforms provided farmers with easy access to product information—such as prices that other farmers were paying for the same crop inputs—that farmers then used as leverage in negotiations with retailers.

Farmers Business Network is one such e-commerce platform. Twelve thousand farmers signed up for the Network's service that provided pricing data on crop inputs, and six thousand farmers signed up for the network's electronic sales platform. In light of this success, the defendants allegedly conspired to boycott these e-commerce platforms and agreed not to sell crop inputs to them. The defendants allegedly had a strong motive to preserve the then-current market structure, because the platforms' price transparency would make it effectively impossible for the defendants to keep prices confidential and to raise them "artificially."

The district court granted the defendants' joint motion to dismiss the consolidated amended complaint for failure to state a claim. On the antitrust claim, the court concluded that the plaintiffs did not adequately allege parallel conduct by the defendants. The court dismissed the claim with prejudice because the plaintiffs "were on notice of the deficiencies identified in the motion to dismiss for months before they filed the [complaint]." The court also dismissed the RICO claim with prejudice and declined to exercise supplemental jurisdiction over plaintiffs' state law claims. On appeal, the plaintiffs challenge only the dismissal of the antitrust claim.

We review the grant of a motion to dismiss *de novo*. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We do not accept as true allegations that "amount to nothing more than a formulaic recitation of the elements" of a claim. *Id.* at 681 (internal quotation omitted).

## II.

Section one of the Sherman Act prohibits "only restraints effected by a contract, combination, or conspiracy." *Twombly*, 550 U.S. at 553 (internal quotation omitted). Therefore, the "'crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express.'" *Id.* (alteration in original) (quoting *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954)). The plaintiff must plead parallel conduct and then "something more," *id*. at 560, commonly described as a "plus factor." *See Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1033 (8th Cir. 2000) (en banc); *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022).

Determining whether the complaint as a whole states a plausible claim for relief is a context-specific task that requires the court to draw on judicial experience and common sense. *Iqbal*, 556 U.S. at 679. Having reviewed the allegations, we agree with the district court that the plaintiffs failed adequately to plead parallel conduct by the defendants.

First, one set of allegations includes "threadbare recitals of the elements" of a Sherman Act claim, "supported by mere conclusory statements." *Id.* at 678. For example, the plaintiffs allege that the "Retailer Defendants and the Wholesaler Defendants knew that retaining their market positions . . . depended on excluding ecommerce sales platforms from the market, so they conspired to eliminate the platforms' product supply." Consolidated Am. Compl. ¶ 93. The plaintiffs also allege that farmers have been deprived of the opportunity to purchase crop inputs at transparent prices "[a]s a result of the Defendants' coordinated boycott." *Id.* ¶ 111. They further allege that "[t]he Manufacturer Defendants agreed with the Wholesaler and Retailer Defendants to cut off the supply of Crop Inputs to ecommerce Crop Inputs sales platforms and Defendants initiated a joint boycott." *Id.* ¶ 96.

The Sherman Act prohibits every "conspiracy" "in restraint of trade," 15 U.S.C. § 1, and these assertions of an unlawful agreement are legal conclusions and not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 680. As "naked assertion[s] devoid of further factual enhancement," such allegations do not allow us to draw the reasonable inference that each defendant is liable for the misconduct alleged. *Id.* at 678 (alteration in original) (internal quotation omitted).

Second, another set of allegations contains factual matter but constitutes impermissible group pleading. *See Owens v. Jastrow*, 789 F.3d 529, 537-38 (5th Cir. 2015). Because "[l]iability is personal," "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d

-6-

815, 818 (7th Cir. 2013). To survive a motion to dismiss, the complaint must specify "which of the defendants are responsible for which acts or omissions." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 732 (11th Cir. 2020) (internal quotation omitted).

The complaint regularly refers to "Manufacturer Defendants," "Wholesaler Defendants," and "Retailer Defendants" "without imputing concrete acts to specific litigants." *Knight*, 725 F.3d at 819. For example, the plaintiffs allege that "the Retailer and Wholesaler Defendants induced the Manufacturer Defendants . . . to cut off the supply of Crop Inputs" to e-commerce crop inputs sales platforms. Consolidated Am. Compl. ¶ 93. The complaint does not identify which retailer or wholesaler defendant allegedly induced which manufacturer defendant.

Similarly, the plaintiffs allege that the manufacturer defendants contracted and allowed their products to be sold only by wholesalers—including the wholesaler defendants—and "authorized retailers," including the retailer defendants. *Id.* ¶ 70. Plaintiffs further allege that the contracts between the manufacturer defendants and the authorized retailers contained strict confidentiality provisions that prohibited the retailer defendants from "disclosing to their customers the manufacturers' prices or any incentives, rebates, or commissions offered by the manufacturers." *Id.* ¶ 71. The wholesaler defendants also had contracts with authorized retailers that contained confidentiality provisions. *Id.* ¶ 73. These allegations do not identify which manufacturer defendant contracted with which wholesaler or retailer defendant, or which wholesaler defendant contracted with which retailer defendant.

The plaintiffs further allege that the Farrell Growth Group, a consulting firm in the agriculture industry, "provides other opportunities for coordination and collusion among Crop Input retailers and wholesalers." *Id.* ¶ 87. The Farrell Growth Group allegedly provides a "benchmarking service" that supplies "market participants

with private competitor data necessary to coordinate and manipulate pricing." *Id.* ¶ 91. On appeal, the plaintiffs maintain that the firm "provided Defendants with a benchmarking service . . . that provided another means for Defendants to collude." The complaint does not identify, however, which defendant or defendants allegedly participated in this service.

Allegations that vaguely refer to "Manufacturer Defendants," "Wholesaler Defendants," or "Retailer Defendants" do not meet the requirement to plead "'who, did what, to whom (or with whom), where, and when.'" *D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1104 (9th Cir. 2024) (quoting *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015)), *cert. denied*, 145 S. Ct. 1478 (2025). Allegations "based on a theory of collective responsibility" are insufficient to state a plausible claim for relief. *Knight*, 725 F.3d at 818.

The plaintiffs argue that the cited references are not impermissible group pleading because the complaint also alleges each defendant's participation separately. We find this contention unpersuasive, because the allegations referring to each defendant's individual actions do not plausibly suggest parallel conduct.

Parallel conduct generally consists of acts that are similar in substance, executed under similar circumstances, and close in time. *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 516-17 (8th Cir. 2018). Viewed in the context of the complaint as a whole, the allegations that refer to specific defendants do not plausibly suggest parallel conduct because they are not sufficiently similar to each other as to "substance, timing, or effect." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 81 (2d Cir. 2025).

Plaintiffs allege that "[i]n 2016, Defendant CHS sent a letter to farmers discouraging them from using FBN by falsely claiming" that Farmers Business

Network does not return any profits to farmers while "'lining the pockets of investors and big data companies.'" Consolidated Am. Compl. ¶ 77. Plaintiffs do not allege, however, that any other defendant sent a similar letter discouraging farmers from using the network. Plaintiffs also allege that "[i]n 2016, Defendant Bayer formed an internal task force to study the long-term competitive impact of FBN's" e-commerce sales platform. *Id.* ¶ 95. Plaintiffs do not allege that any other defendant formed a similar task force. Plaintiffs further allege that when a Syngenta executive learned that branded crop inputs had been sold on e-commerce platforms, "he falsely claimed that ecommerce Crop Inputs sales platforms would deliver counterfeit products." *Id.* ¶ 97. The complaint does not assert that any other defendant cooperated in making this statement or made a similar statement.

The complaint further alleges that "[r]etailers who failed to comply with the group boycott were penalized by the Defendants." *Id.* ¶ 98. This assertion contains impermissible group pleading and does not give fair notice to each defendant of the claim being made against it. The subsequent allegation that "Syngenta initiated an audit of its authorized retailers after learning that some retailers had sold Crop Inputs product" to e-commerce platforms does not plausibly suggest parallel conduct, because there is no allegation that any other manufacturer or wholesaler defendant coordinated with Syngenta in the audit or initiated a similar audit.

The complaint also alleges that "Defendants Bayer, BASF, and Corteva" have contractual provisions with authorized retailers that allow "audits of authorized retailers' books and records and on-site inspections at any time." Consolidated Am. Compl. ¶ 99. Aside from a conclusory assertion that the defendants "used these contractual provisions to ensure" that e-commerce platforms "could not purchase name brand Crop Inputs from an authorized retailer," *id.*, there is no allegation about an audit or on-site inspection. And the complaint does not allege when the provisions were adopted or whether the provisions are commonplace in the industry. The mere

existence of these contractual provisions does not plausibly suggest an unlawful agreement. *Cf. In re Elevator Antitrust Litig.*, 502 F.3d 47, 51 (2d Cir. 2007).

Plaintiffs further allege that the membership of several defendants in CropLife America and the Agricultural Retailers Association—two trade associations—"serves as an ideal vehicle for collusion." Consolidated Am. Compl. ¶¶ 80, 85. But the summary assertion that annual trade association conferences "provide abundant opportunities for Defendants to coordinate and collude," *id.* ¶ 86, is insufficient, and plaintiffs do not allege factual matter that plausibly suggests that the defendants coordinated or colluded.

Trade association membership, without more, is insufficient to state a plausible claim under § 1 of the Sherman Act. *See Twombly*, 550 U.S. at 567 n.12. In *SD3*, the court held that a plaintiff pleaded a plausible Sherman Act claim arising from a trade association meeting by identifying the "particular time, place, and manner in which the boycott initially formed." 801 F.3d at 430. Here, by contrast, the complaint does not assert that a specific defendant attended *any* trade association meeting, much less a particular meeting where a boycott of e-commerce platforms was discussed. For example, plaintiffs allege that in 2017, the Agricultural Retailers Association hosted a conference where a speaker "announced his belief that it was time for the Crop Inputs retailers to take steps to affirmatively combat the intrusion of e-commerce entities." Consolidated Am. Compl. ¶ 86. The plaintiffs allege that the "ensuing topics of conversation amongst ARA members . . . provided ample opportunity to build upon [the speaker's] explicit calls to action." *Id.* But mere "opportunity" to collude is not enough; the complaint does not identify which "ARA members" allegedly participated in conversations or the topic of the discussions.

Separately, the plaintiffs allege that after the Farmers Business Network purchased Yorkton, a Canadian-based retailer that maintained supply agreements with

defendants Bayer, Syngenta, BASF, Corteva, and Winfield, "the Wholesaler and Retailer Defendants threatened to retaliate against the Manufacturer Defendants if they honored the agreements." *Id.* ¶¶ 102-103. For example, after the purchase, Federated and Univar circulated communications that pressured their manufacturing partners to refrain from supplying crop inputs to Yorkton. *Id.* ¶¶ 104-106. Subsequently, Bayer, Corteva, Cargill, and Winfield allegedly informed Farmers Business Network that they would no longer supply crop inputs. *Id.* ¶ 107.

These allegations, however, do not plausibly suggest parallel conduct. The allegations concerning Yorkton refer to conduct taken by the "Defendants' Canadian counterparts," *id.* ¶ 117, and not the named defendants. Evidence of a conspiracy in a foreign market may be considered a "plus factor," but it does not establish parallel conduct in the market at issue. *See In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 401-02 (3d Cir. 2015).

For these reasons, we conclude that the complaint does not adequately plead parallel conduct, and the district court properly dismissed the antitrust claim on that basis. The plaintiffs contend that the district court erred by imposing "the more stringent summary judgment standard of probability." While the court did once quote the summary judgment standard for a § 1 claim, the court properly began its discussion by stating the correct legal standard, *In re Crop Inputs Antitrust Litig.*, 749 F. Supp. 3d at 1002-03, and relied throughout its order on cases applying Rule 12(b)(6), *Twombly*, and *Iqbal*. *Id.* at 1003-13. In any event, we have applied the standard applicable to a motion to dismiss on *de novo* review, so any potential error is harmless.

The plaintiffs also challenge the district court's judgment dismissing the Sherman Act claim with prejudice without leave to amend the complaint. The plaintiffs maintain that the district court incorrectly inferred that any amendment of

-11-

the complaint would have been futile. The court observed that the amended complaint was the third attempt to state viable claims, that the plaintiffs were on notice of pleading deficiencies for months before they filed the operative amended complaint, and that they did not supplement their pleadings with allegations sufficient to overcome the deficiencies.

We see no error in the district court's conclusion, and we further observe that "a district court in granting a motion to dismiss is not obliged to invite a motion for leave to amend if plaintiff did not file one." *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 742 (8th Cir. 2014). The plaintiffs made three conditional requests for leave to amend in response to motions to dismiss, but such fleeting references to amendment are insufficient. *See In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884-85 (8th Cir. 2009). The plaintiffs were on notice of the deficiencies in the complaint after the defendants moved to dismiss a similar pleading, but the plaintiffs did not submit a proposed amended complaint or proffer the substance of any potential amendments. Under those circumstances, the district court properly entered a dismissal with prejudice. *See id.* at 884; *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1034 (8th Cir. 2012).

The judgment of the district court is affirmed.

_____